**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Wojciech F. Jung, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Mantara, Inc. *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 13-13370 (____)<br><br>(Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO ASSUME ASSET PURCHASE AGREEMENT FOR THE SALE OF
CERTAIN INTELLECTUAL PROPERTY PURSUANT TO SECTIONS 105(a) AND 365
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6006**

Mantara, Inc. ("**Mantara**") and UNX LLC ("**UNX**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases, submit this motion (the "**Motion**") for entry of an order substantially in the form submitted herewith (the "**Order**") authorizing the Debtors to assume the Asset Purchase Agreement (defined below). In support of this Motion, the Debtors submit the *Declaration of Michael Chin in Support of First Day Applications and Motions* (the "**Chin Declaration**"). In further support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases are Mantara, Inc. and UNX LLC. The last four digits of their federal tax identification number are 2570 and 6704 respectively.

10/15/2013 27084250.1

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are Bankruptcy Code sections 105 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**BACKGROUND**

4. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").

5. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no trustee, examiner or committee has been requested or appointed.

6. Additional background facts surrounding the commencement of these Chapter 11 Cases are more fully described in the Chin Declaration, which is being filed concurrently herewith.

A.    The Asset Purchase Agreement

7. Beginning in June 2013, and prior to filing these cases, the Debtors marketed their assets for sale. In the course of that process, the Debtors received several expressions of interest with respect to acquisition of some or all of the Debtors' assets. Since beginning the referenced marketing process, the Debtors have reached out to approximately 43 parties, approximately 16 of whom executed confidentiality agreements and conducted various

levels of due diligence. Ultimately, no party expressed a real commitment to purchase all or some of the Debtors' assets as a result of that process. Throughout this period, the Debtors' financial condition was deteriorating.

8. Shortly prior to the Petition Date, Deutsche Bank Securities Inc. (the "**Purchaser**") expressed an interest in purchasing the Debtors' intellectual property and intellectual property rights (collectively, the "**IP Assets**"). In furtherance thereof, the Debtors and the Purchaser have entered into that certain Asset Purchase Agreement dated October 16, 2013 (together with all other agreements related thereto, the "**Asset Purchase Agreement**"). As more fully stated in the Asset Purchase Agreement (a copy of which is annexed to the proposed Order submitted herewith), the Purchaser agreed to purchase the IP Assets free and clean of liens for $1,250,000 (the "**Purchase Price**"). The Asset Purchase agreement is explicitly subject to Bankruptcy Court approval and contemplates that the Debtors may consider higher and better offers (as more fully set forth below and in the Asset Purchase Agreement).

9. In connection with the execution of the Asset Purchase Agreement, and prior to the Petition Date, the Purchaser posted a deposit of $100,000 (the "**Deposit**"). Given the Debtors' financial condition, the Deposit enabled the Debtors to meet some of their prepetition obligations, and it was for this reason (so that the Deposit would be available for prepetition obligations) that the Asset Purchase Agreement was executed prepetition.

10. Because the Asset Purchase Agreement was executed prior to the Petition Date, the Purchaser has conditioned the Asset Purchase Agreement on the Debtors assuming the Asset Purchase Agreement promptly upon the bankruptcy filing. The Debtors and the Purchaser believe that the assumption of the Asset Purchase Agreement is necessary to protect

-3-

the Purchaser's rights under the Asset Purchase Agreement during the chapter 11 cases. Also given the financial condition of the Debtors, and as party of the discussions around negotiation of the Asset Purchase Agreement, the Debtors requested the Purchaser or an affiliate to provide debtor-in-possession financing to the Debtors. An affiliate of the Purchaser has agreed to provide such financing and negotiated such documentation with the Debtors as noted in other proceedings. That post-petition financing is also conditioned upon assumption of the Asset Purchase Agreement.

11. In order to satisfy the condition in the Asset Purchase Agreement and the debtor-in-possession financing agreement, the Debtors must assume the Asset Purchase Agreement on or before October 25, 2013. This timing is driven by an arrangement the Debtors reached prepetition with their prepetition secured lender. As described in more detail in the Chin Declaration, prior to the Petition Date, Mantara and Venture Lending & Leasing VI, Inc. (the "**Prepetition Lender**") entered into negotiations with respect to Mantara's obligations under the Prepetition Loan Documents. In connection with those negotiations, and Mantara's decision to sell certain of its assets under the Asset Purchase Agreement, Mantara and the Prepetition Lender entered into forbearance and payoff agreement dated October 8, 2013 (the "**Pay-Off Letter**"). Pursuant to the Pay-Off Letter, the Prepetition Lender agreed to, *inter alia*, reduce Mantara's obligations under the Prepetition Loan Documents to $520,000 (the "**Pay-Off Amount**") - a 56% reduction of the principal amount outstanding - but only if it receives the Pay-Off Amount on or before October 25, 2013. So as to take advantage of the time-limited reduced Pay-Off Amount, the Debtors negotiated with the Purchaser to provide, through its affiliate, sufficient post-petition financing to pay the Pay-Off Amount to the Prepetition Lender and fund the Debtors' operating costs and the administrative costs of the

Chapter 11 Cases to allow the Debtors to pursue a sale process pursuant to section 363 of the Bankruptcy Code.

## RELIEF REQUESTED

12. By this Motion, the Debtors seek entry of an order authorizing the Debtors to assume the Asset Purchase Agreement.

## BASIS FOR RELIEF

A. Assumption of the Asset Purchase Agreement Is in the
   Best Interests of the Debtors and their Estates

13. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Med. Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 386 (2d Cir. 1997). The policy underlying Section 365 is to permit chapter 11 debtors to use property of the estate and abandon burdensome property; *see Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992).

14. Here, the Asset Purchase Agreement is clearly executory in nature. As of the Petition Date, material obligations on behalf of the Debtors and the Purchaser remained incomplete under the Asset Purchase Agreement. More specifically, pursuant to the Asset Purchase Agreement both parties have material obligations which are necessary conditions outstanding in order to consummate the sale of the IP Assets.

15. Courts have generally found sale contracts and asset purchase agreements to be executory in nature. *See*, *In re General Development Cop.*, 84 F.3d 1364, 1371 (11th Cir.

-5-

1996) (finding where debtor is the seller of property of the estate, courts have found the contract to be an executory one); *In re The Record Co., Inc.*, 8 B.R. 57, 59 (Bankr. S.D. Ind. 1980) (finding a prepetition sale of a debtor's business to be executory in nature which may be assumed or rejected pursuant to section 365); *In re Young*, 214 BR. 905, 910 (Bankr. D. Idaho 1997) (where, pursuant to a prepetition purchase agreement, the debtor "had yet to pay the purchase price, and [sellers] had yet to transfer title or give up possession...." is an executory contract); *In re Balco Equities Ltd., Inc.*, 323 B.R. 85, 96 (Bankr. S.D.N.Y. 2005) (citing *In re Sundial Asphalt Co., Inc.*, 147 B.R. 72, 83 (E.D.N.Y. 1992) ("Most Courts have held that a land sale contract is executory when the debtor-vendor has not yet conveyed or been ordered to convey title.")).

16. Indeed, bankruptcy courts have approved the assumption of asset sale agreements entered into prepetition where the sale did not close prior to the bankruptcy filing. *See*, *e.g.*, *Byrd v. Gardinier, Inc. (In re Gardinier, Inc.)*, 831 F.2d 974, 974-75 (11th Cir. 1987) (explaining, *in dicta*, that the bankruptcy court approved the debtor's motion filed pursuant to sections 363(b) and 365 of the bankruptcy code to assume a pre-petition "Contract for Sale of Real Estate" for a $5,117,000 purchase price and approve the sale of the property) (*affirming In re Gardinier, Inc.*, 50 B.R. 491, 492 (Bankr. M.D. Fla. 1985) ("In approving the sale of the [debtor's real property], this Court has already ruled that the purchase and sale agreements were executory and assumable but the brokerage agreements were not executory because the brokers had performed their obligations prepetition when they procured ready, willing and able buyers."); *In re Waterscape Resort LLC*, Case No. 10-11593 (SMB) (Bankr. S.D.N.Y. May 31, 2011) (order granting authority to debtor to assume and consummate pending prepetition sale

agreements with all liens, claims, and interests attaching to proceeds of sale in same force, effect and priority as immediately prior to closing of sale).

17. Courts generally defer to a debtor's business judgment in determining whether to authorize the assumption or rejection of an executory contract or unexpired lease. *NLRB v. Bildisco and Bildisco*, 465 U.S. at 523; *Market Square Inn, Inc.*, 978 F.2d at 121. Upon finding that a debtor has exercised its sound business judgment, courts generally will approve the assumption or rejection of a contract or lease under section 365(a) of the Bankruptcy Code; *NLRB v. Bildisco and Bildisco*, 465 U.S. at 523; *Market Square Inn, Inc.*, 978 F.2d at 121 (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *see also Orion Pictures Corp.,* 4 F.3d at 1099 (noting that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); *City of Covington v. Covington Landing L.P.*, 71 F.3d. 1221, 1226 (6th Cir. 1995); *Matter of Taylor*, 103 B.R. 511, 517 (D.N.J. 1989), *aff'd in part, rev' d, in part*, 913 F.2d 102 (3d Cir. 1990) (citing *Sharon Steel Corp. v. Nat'l Gas Distribs. Corp.*, 812 F.2d 36, 39-40 (3d Cir. 1989); *In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[a] court will ordinarily defer to the business judgment of the debtor's management").

18. The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of an executory contract or unexpired lease will benefit the debtor's estate. *See In re W & L Assocs., Inc.*, 71 B.R. 962, 966 (Bankr. E.D. Pa. 1987) ("We do not consider the 'business judgment test' to be a strict standard to meet."); *In re*

*Metro Transp. Co.*, 87 B.R. 338, 343 (Bankr. E.D. Pa. 1988) ("We reiterate that the 'business judgment test' is not a 'strict standard to meet.'").

19. A debtor's corporate decisions are entitled to deference absent a showing of bad faith, self-interest or gross negligence. *In re Integrated Resources*, 147 B.R. at 656; *see also In re Global Crossing Ltd.*, 295 B.R. 720, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw").

20. The Debtors submit that their decision to assume the Asset Purchase Agreement is an exercise of sound business judgment that is in the best interest of the Debtors' estates. The Asset Purchase Agreement is the result of an extensive marketing process for the Debtors' IP Assets and represents the only serious offer the Debtors received for the IP Assets, after soliciting approximately 43 potential purchasers. The Asset Purchase Agreement was executed prepetition to make the Deposit available to the Debtors to apply to certain prepetition obligations. In consideration for that accommodation to the Debtors and to protect the Purchaser's rights under the prepetition executory Asset Purchase Agreement, the Asset Purchase Agreement and the debtor-in-possession financing have been conditioned upon assumption of the Asset Purchase Agreement. Accordingly, if the Debtors do not assume the Assumption of the Asset Purchase Agreement on or before October 25, 2013, the Debtors' estates stand to lose the significant value provided by the Asset Purchase Agreement and the debtor-in-possession financing.

21. Significantly, entry of the Order approving the Debtors' assumption of the Asset Purchase Agreement would not constitute approval of the sale transaction contemplated

in the Asset Purchase Agreement. In fact, the Asset Purchase Agreement expressly provides that the Debtors are not obligated to consummate the transaction contemplated in the Asset Purchase Agreement unless, and until, certain conditions are satisfied, including Court approval of the sale following a sale hearing.

22. The Debtors' request for Court Approval of the sale transaction is the subject of a separate motion (the "**Sale Motion**") seeking (i) the scheduling of a fully noticed hearing (the "**Sale Hearing**"), and (ii) following the Sale Hearing, entry of an order approving the Asset Purchase Agreement and authorizing the sale of the IP Assets free and clear of all liens, claims, encumbrances and other interests. As set forth in the Sale Motion, the Debtors propose to consider bids received up to five days prior to the Sale Hearing and, if warranted, conduct an auction for the IP Assets and the Asset Purchase Agreement expressly contemplates that the Debtors may do so.

23. By contrast to the Sale Motion, the instant Motion seeks only an order authorizing the Debtors to assume their rights and obligations under the Asset Purchase Agreement. The Order approving the Debtors' assumption of the Asset Purchase Agreement will not limit the Court's discretion to consider the Sale Motion or other offers for the purchase of the IP Assets.

24. In light of the significant value to the Debtors' estates represented by the Asset Purchase Agreement and the debtor-in-possession financing, the Debtors submit that it is a reasonable, good faith exercise of their business judgment to assume the Asset Purchase Agreement.

## WAIVER OF BANKRUPTCY RULES 6003

25. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6003. Pursuant to Rule 6003, "Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting… a motion to assume or assign an executory contract or unexpired lease in accordance with §365." As set forth above, the sale of the IP Assets is essential to prevent potentially immediate and irreparable damage to the Debtors' operations and value. Assumption of the Asset Purchase Agreement by October 25, 2013 is necessary to avoid termination of the Asset Purchase Agreement by the Buyer. Accordingly, the Debtors submit that ample cause exists to justify a waiver imposed by Bankruptcy Rule 6003, to the extent it applies.

## NOTICE

26. Notice of this Motion has been given (a) the Office of the United States Trustee for the Southern District of New York, (b) the 20 largest non-insider unsecured creditors of the Debtors on a consolidated basis, (c) Deutsche Bank AG, Cayman Islands Branch, as DIP Lender, (d) Sidley Austin, LLP, as counsel to the DIP Lender (e) Venture Lending & Leasing VI, Inc., as the Prepetition Lender, (f) Greene Radovsky Maloney Share & Hennigh LLP, as counsel to the Prepetition Lender, (g) Sidley Austin, LLP, as counsel to the Purchaser, and (h) those parties who have filed a notice of appearance and request for service of pleadings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

27. No previous motion for the relief sought herein has been made to this or to any other court.

**WHEREFORE**, the Debtors respectfully request that this Court: (a) enter an Order, in the form submitted herewith, granting the relief requested herein; and (b) grant to the Debtors such other and further relief as the Court may deem proper.

Dated:  October16, 2013
New York, New York

        Respectfully submitted,

        **LOWENSTEIN SANDLER LLP**

        */s/ Wojciech F. Jung*
        Kenneth A. Rosen, Esq
        Wojciech F. Jung, Esq.
        1251 Avenue of the Americas
        New York, New York 10020
        (212) 262-6700 (Telephone)
        (212) 262-7402 (Facsimile)

        *Proposed Counsel to the Debtors and*
        *Debtors-in-Possession*