**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Wojciech F. Jung, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Mantara, Inc. *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 13-13370 (____)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING POST-PETITION SECURED SUPERPRIORITY FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING**

Mantara, Inc. ("**Mantara**") and UNX LLC ("**UNX**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases, submit this motion (the "**Motion**") for entry of an interim order substantially in the form submitted herewith (the "**Interim Order**") and a final order (a) approving post-petition secured superpriority financing pursuant to sections 105, 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), and 364(e) of the Bankruptcy Code, (b) authorizing the Debtors to use cash collateral ("**Cash Collateral**"), (c) modifying the automatic stay, and (d) scheduling a final hearing pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the **"Final Hearing"**) for the entry of a Final Order providing for the

---

[1] The Debtors in these chapter 11 cases are Mantara, Inc. and UNX LLC. The last four digits of their federal tax identification number are 2570 and 6704 respectively.

10/14/2013 27071542.1

relief requested herein on a final basis. In support of this Motion, the Debtors submit the *Declaration of Michael Chin in Support of First Day Applications and Motions* (the "**Chin Declaration**"). In further support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are Bankruptcy Code sections 105, 361, 362, 363, 364, 503(b) and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").

## BACKGROUND

4. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").

5. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no trustee, examiner or committee has been requested or appointed.

6. Additional background facts surrounding the commencement of these Chapter 11 Cases are more fully described in the Chin Declaration, which is being filed concurrently herewith.

## PREPETITION SECURED INDEBTEDNESS

A.Prepetition Secured Debt

7.As of the Petition Date, Mantara and UNX, as borrowers and guarantors (as applicable), and Venture Lending & Leasing VI, Inc. (the "**Prepetition Lender**"), were parties to certain loan documents (the "**Prepetition Loan Documents**"). The Prepetition Loan Documents consist of (i) that certain Loan and Security Agreement, dated February 3, 2012, between Mantara and Prepetition Lender, (ii) that certain Supplement to the Loan and Security Agreement, dated as of February 3, 2012, (iii) that certain Intellectual Property Security Agreement, dated as of February 3, 2012, between Mantara and Prepetition Lender, (iv) that certain Continuing Guaranty Agreement, dated as of May 13, 2012, between UNX and Prepetition Lender; (v) that certain Intellectual Property Security Agreement, dated as of May 13, 2012, between UNX and Prepetition Lender; (vi) that certain Security Agreement, dated as of May 14, 2012, by and between UNX and Prepetition Lender; and (vii) any other related loan and collateral security documents that may have been executed by Mantara, UNX or any of their affiliates in connection with the transactions contemplated by the foregoing, in each case, as the same may have been amended, modified, supplemented or restated.

8.The Debtors' obligations under the Prepetition Loan Documents are secured by liens on and security interests in substantially all of their assets.

9.Prior to the Petition Date, Mantara's outstanding obligations under the Prepetition Loan Documents totaled approximately $1,182,677 (the "**Prepetition Obligations**").

10.Prior to the Petition Date, Mantara and the Prepetition Lender entered into negotiations with respect to Mantara's obligations under the Prepetition Loan Documents. In connection with those negotiations, and Mantara's decision to sell certain of its assets, Mantara

-3-

and the Prepetition Lender entered into a forbearance and payoff agreement dated October 8, 2013 (the "**Pay-Off Letter**"). A copy of the Pay-Off Letter is annexed to the Interim Order as an exhibit. Pursuant to the Pay-Off Letter, the Prepetition Lender agreed to, *inter alia*, reduce Mantara's obligations under the Prepetition Loan Documents to $520,000 (the "**Pay-Off Amount**") - a 56% reduction of the principal amount outstanding – but *only if* it receives the Pay-Off Amount on or before October 25, 2013. Thus, the timing of this Motion is of the utmost importance.

B.   Need for Financial Restructuring and Use of Cash
     Collateral and Debtor-in-Possession Financing

11.   As more fully set forth in the Chin Declaration, the Debtors filed these Chapter 11 Cases in order to effectuate a proposed sale of a Debtors' intellectual property assets (the "**IP Assets**") on an expedited basis with Deutsche Bank Securities Inc. (the "**IP Buyer**")[2]. The Debtors maintain that an expedited sale of the Debtors' assets is the best way to maximize value for the Debtors' estate and alleviate the impact of the Chapter 11 Cases. Because the Debtors' current cash is insufficient to consummate the Pay-Off Letter and also fund the administrative costs of these chapter 11 cases, the Debtors need post-petition financing in order to effectuate the sale of their IP Assets for the benefit of their estates.

12.   The Debtors have reached an agreement with Deutsche Bank AG Cayman Island Branch (the "**DIP Lender**") on the terms of a $800,000 post-petition debtor-in-possession financing facility (the "**DIP Financing**"), that will provide the Debtors the necessary funds to immediately satisfy the Pay-Off Amount, as set forth in the Pay-Off Letter, to the Prepetition

---

[2] The IP Buyer is an affiliate of the DIP Lender.

Lender and to have the necessary funding and liquidity during the pendency of these Chapter 11 Cases.[3] A copy of the DIP Financing is attached to the Interim Order as Exhibit A.

**Concise Statement Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2**

13. Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2, the following is a concise statement and summary of the proposed material terms of the Interim Order:

| | **DIP FINANCING** |
|---|---|
| Lender | Deutsche Bank AG Cayman Islands Branch |
| Borrower | Mantara, Inc. |
| Guarantor | UNX, LLC |
| Commitment | $800,000. Initial funding of $650,000 upon interim court approval, with the remaining $150,000 funded upon entry of a final dip order. |
| Interest Rate | 7.5% per annum. *See* DIP Financing at ¶ 1. |
| Default Rate | Interest Rate plus 2.00% per annum. *See* DIP Financing at ¶ 1. |
| Use of Proceeds | The DIP Financing will be used to immediately satisfy the Pay-Off Amount due to the Prepetition Lender under the Pay-Off Letter, with the remainder to fund the Debtors' Chapter 11 Cases. *See* DIP Financing at ¶ 6(f). |
| Collateral | All present or after acquired assets of the Debtors, except for any proceeds of any Avoidance Actions. *See* Interim Order at ¶ 10. |
| Fees | N/A |
| Lender expenses | The Debtors are obligated pay all out-of-pocket expenses of the DIP Lender (including reasonable attorneys' fees) in connection with the enforcement of any provision of the DIP Facility. *See* Interim Order ¶ 7. |
| Indemnification | The Debtors agree to indemnify and hold harmless the DIP Lender, its employees and agents, for any losses arising out of the DIP Facility, except for gross negligence and willful misconduct. The Debtors also agree to reimburse all reasonable out-of-pocket expenses of the DIP Lender in connection with the enforcement of any provision of the DIP Facility. *See* Interim Order ¶ 7. |
| Maturity Date | The earlier of (1) December 31, 2013; (2) the date of acceleration of the Obligations; (3) the date of consummation of any sale of the Debtors' assets, or (4) confirmation of a plan of reorganization with respect to any Loan Party. |
| Liens and Priorities | Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations (as defined in the Interim Order) shall constitute superpriority administrative expense claims (the "DIP Superpriority Claims") against the Debtors with priority in payment over any and all administrative expenses, |

---

[3] Paying off the Prepetition Lender as set forth in the Pay-Off Letter benefits the estate. First, the payment will satisfy the Debtors' obligations to the Prepetition Lender in full at a more than 56% discount. Second, the payment will stop the accrual of further interest and associated costs. Third, the Interim Order reserves the right for third party with standing to investigate the obligations. Fourth and more importantly, because the Prepetition Lender is owed more than half of the pre-petition non-insider debt, even on an unsecured basis the Prepetition Lender would receive more than the Pay-Off Amount.

|  | |
|---|---|
|  | adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of either of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, subject to the Carve-Out (as defined in the DIP Facility).  *See* Interim Order ¶ 9.<br><br>As security for the DIP Obligations, the Debtors seek to grant the DIP Lender, subject only to the Carve-Out, valid, binding and fully perfected, security interests in and liens upon (the "DIP Liens"), all present and after-acquired property of the Debtors of any nature whatsoever, including, without limitation, all cash and cash equivalents contained in any accounts maintained by the Debtors but excluding all Avoidance Actions of the Debtors or their estates and any proceeds thereof (collectively, with all proceeds and products of any or all of the foregoing, the "DIP Collateral").  *See* Interim Order ¶ 10. |
| Liens on Avoidance Actions | The DIP Lenders will not receive a lien on causes of action under Chapter 5 of the Bankruptcy Code.  *See* Interim Order ¶ 10. |
| Carve-Out | The DIP Superpriority Claims and DIP Liens shall be subject to payment of (x) the aggregate amount of any unpaid fees, costs and expenses that were provided for in the Approved Budget and accrued or incurred prior to the Carve-Out Event by the professionals retained by the Debtors and any professional retained by any official committee of unsecured creditors (a "Committee") that may be appointed in these cases (collectively, the "Professionals") to the extent allowed by an order of this Court, plus (y) those fees, costs and expenses incurred by the Professionals after the Carve-Out Event and subsequently allowed by order of this Court (and, if applicable, in compliance with the Approved Budget) in an amount not to exceed $50,000 in the aggregate, plus (z) fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930.  *See* Interim Order ¶ 12. |
| Prepayment | There is no prepayment provision |
| Credit Bid | The DIP Lender has the unqualified right to credit bid in any sale of the Collateral pursuant to sections 363, 1129 and/or 725 of the Bankruptcy Code.  *See* Interim Order ¶ 15. |
| Conditions | (1) Entry of Interim and Final Orders of Bankruptcy Court authorizing DIP Financing; (2) Entry of the Assumption Order; (3) execution of the asset purchase agreement; (4) the Debtors' filing of a sale motion pursuant to section 363 of the Bankruptcy Code; (5) approval of the Pay-Off Letter; and (6) DIP Lender approval of the thirteen-week budget.  *See* DIP Financing at ¶ 4. |
| Events of Default | The DIP Facility contains certain usual and customary events of default for facilities of this type, including but not limited to: |

| | |
|---|---|
| | • Failure of the Court to have entered the Final Order, in form and substance acceptable to the DIP Lender on or before the twenty-first (21st) day following entry of this Interim Order;<br>• Entry of, or any Loan Party seeking, an order amending, supplementing, staying, vacating or otherwise modifying the DIP Loan Agreement, the Interim Order, the Final Order or the Assumption Order without the written consent of the DIP Lender.<br>• Failure to obtain on or before November 21, 2013, Court approval of the Sale Motion, pursuant to an order (the "<u>Sale Order</u>") in form and substance acceptable to the DIP Lender, granting the Sale Motion;<br>• Failure to consummate the sale of the IP Assets as contemplated by the Sale Motion and authorized under the Sale Order on or before the Outside Date (as defined in the asset purchase agreement with the IP Buyer).<br>• (i) there shall occur any disruption of service of the Loan Parties or any other event that has, or could reasonably be expected to have, a material adverse effect on the Acquired Assets.<br>*See* Interim Order ¶ 21. |
| Bankruptcy Code section 506(c) Claims | The Debtors are waiving any rights under section 506(c) of the Bankruptcy Code against the DIP Lender and no expenses of administration of the Case, except to the extent of the Carve-Out, shall be charged against or recovered from the collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without prior written consent. *See* Interim Order ¶ 17. |

14.    The provisions outlined above are fair and necessary for the Debtors to be able to access the DIP Financing.

C.    <u>The Proposed DIP Financing</u>

15.    The Debtors have an immediate and critical need for access to additional financing in order to successfully complete their goals for these Chapter 11 Cases. To address that need, the Debtors have agreed, subject to approval by this Court, to the terms of the DIP Financing. Pursuant to the DIP Financing, the DIP Lender has agreed to provide $800,000 to be used towards the Debtors' working capital needs pursuant to the Approved Budget (as defined in the DIP Facility) and to effectuate the Pay-Off Letter and the sale of the IP Assets.

16.    Without access to the DIP Financing, the Debtors expect to be unable to fund the Pay-Off Amount pursuant to the Pay-Off Letter prior to the applicable deadline and to complete

the proposed sale with the IP Buyer. Accordingly, without the necessary DIP Financing the Debtors would be forced to liquidate immediately, to the detriment of the Debtors' stakeholders and creditors.

17. The Debtors believe that the DIP Financing represents the best, and likely the only, financing available to them to fund these Chapter 11 Cases. The Debtors have reached out to third parties with respect to post-petition financing. Neither the Prepetition Lender nor the Debtors' insiders have agreed to provide financing. Only the DIP Lender expressed a willingness to provide such financing, and conditioned the DIP Financing on the terms described above. Furthermore, the terms of DIP Financing are favorable to the Debtors based on comparable debtor-in-possession financing agreements, as the DIP Lender is not seeking any fees or reimbursement beyond the interest accruing on the loan.

18. The Debtors believe that the DIP Financing provides them their best, and likely only, opportunity to have successful bankruptcy cases.[4]

### RELIEF REQUESTED

19. By this Motion, the Debtors seek entry of the Interim Order (a) approving the DIP Financing, (b) modifying the automatic stay, and (c) scheduling a hearing for entry of an order providing for the relief granted herein on a final basis.

### BASIS FOR RELIEF REQUESTED

20. The DIP Financing is appropriate and is in the best interests of the Debtors and their estates. In addition, the Debtors satisfy the necessary requirements to obtain post-petition financing. Section 364(c) of the Bankruptcy Code states as follows:

---

[4] Alternatively, to the extent the Debtors are unable to effectuate the Pay-Off Letter with the DIP Financing, the Debtors seek to use the cash generated from their business operations to fund their day-to-day operations and to service other business operating expenses. The Prepetition Lender has consented to the proposed use of Cash Collateral to the extent necessary. In addition, the Prepetition Lender holds a significant equity cushion which "is the classic form of protection for secured debt..." *In re Mellor,* 734 F.2d 1396, 1400 (9th Cir. 1984).

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. 364(c).

21. A debtor may borrow money under section 364(c) of the Bankruptcy Code if the debtor meets its burden of establishing that it was unable to obtain alternative financing. *See In re Photo Promotion Associates, Inc.*, 89 B.R. 328, 333 (S.D.N.Y. 1988).

22. The Debtors have determined that financing is available only under sections 364(c) of the Bankruptcy Code. Substantially all of the Debtors' assets are encumbered and, despite the diligent efforts of the Debtors and their advisors, they have been unable to procure the necessary funding absent the proposed superpriority financing. Furthermore, the Debtors have negotiated the best terms available to obtain the funding they need to maintain sufficient liquidity to preserve their assets over the course of their Chapter 11 Cases. The Debtors submit that the circumstances of these cases require the Debtors to obtain financing from the DIP Lender under section 364(c) of the Bankruptcy Code. Without access to the proposed DIP Financing, the Debtors' liquidity will evaporate and Debtors will be forced to liquidate.

23. The value of the Prepetition Lender's interest in its collateral is preserved by the DIP Financing because it ensures the Debtors will be able to pay the Pay-Off Amount (and satisfy in full the Prepetition Lender's claim) and complete the sale of their IP Assets. Accordingly, the Debtors submit that the Prepetition Lender's interests are sufficiently protected

by the equity in the Debtors' assets. Accordingly, the adequate protection proposed by the Debtors is fair and reasonable and sufficient to satisfy the requirements of Bankruptcy Code sections 364(c).

<u>The Debtors are Unable to Obtain Alternative Financing</u>

24. Pursuant to Section 364(c) of the Bankruptcy Code, a court may authorize a debtor to obtain post-petition financing if the debtor demonstrates its inability to obtain alternative financing. 11 U.S.C. 364(c)(1). However, section 364 does not require that a debtor seek alternative financing from every possible lender; rather, the debtor must demonstrate that sufficient efforts were made to obtain financing on other terms. *Bray v. Shenandoah Fed. Savs. & Loan Assoc. (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (finding that the trustee's unsuccessful efforts in seeking financing from lenders in the immediate geographical area sufficiently demonstrated that trustee was unable to obtain alternative financing); *In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (holding that the debtor's testimony that its numerous failed attempts to procure financing from various sources sufficiently demonstrated its unsuccessful efforts to obtain financing on other terms).

25. As set forth in the Chin Declaration, despite their efforts, the Debtors have been unable to (a) procure sufficient financing (i) in the form of unsecured credit allowable under section 503(b)(1), or (ii) as an administrative expense under section 364(a), without granting superpriority liens pursuant to section 364(c); or (b) obtain post-petition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought. The Debtors, therefore, submit that they have met their burden of proof on this issue.

**INTERIM APPROVAL SHOULD BE GRANTED**

26. Bankruptcy Rule 4001 provides that final hearings on motions to use cash collateral or obtain post-petition financing may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on such motions and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

27. Pursuant to Bankruptcy Rule 4001, the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and enter the Interim Order approving the DIP Financing, in order to (a) maintain and finance Debtors' the operating expenses during the pendency of the Chapter 11 Cases, (b) effectuate the Pay-Off, and (c) avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest. The expedited timeframe is dictated by the Debtors' immediate need for liquidity as well as deadlines dictated by the DIP Lender. Furthermore, the Debtors request that the Court schedule the Final Hearing on the relief requested herein.

28. Absent authorization from the Court to borrow the DIP Financing on an interim basis pending a Final Hearing, the Debtors will be immediately and irreparably harmed as a result of an inability to comply with the Pay-Off Letter and complete the sale with the IP Buyer. Without the liquidity provided by the DIP Financing, the Debtors' businesses will be brought to an immediate halt leading to the loss of significant value, and the Debtors' ability to maintain their remaining business relationships with their vendors, as well as their ability to meet other operating expenses will be compromised. In short, serious, immediate and irreparable harm to the Debtors and their estates would occur, with disastrous consequences for the Debtors, their estates, and creditors, if the Debtors do not obtain the immediate relief requested herein.

## REQUEST FOR FINAL HEARING

29. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable but within twenty one (21) days from the entry of the Interim Order (as required by the DIP Financing), and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

30. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, immediate access to the DIP Financing is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

31. Notice of this Motion has been given (a) the Office of the United States Trustee for the Southern District of New York, (b) the 20 largest non-insider unsecured creditors of the Debtors on a consolidated basis, (c) Deutsche Bank AG, Cayman Islands Branch, as DIP Lender, (d) Sidley Austin, LLP, as counsel to the DIP Lender (e) Venture Lending & Leasing VI, Inc., as the Prepetition Lender, (f) Greene Radovsky Maloney Share & Hennigh LLP, as counsel to the Prepetition Lender, and (g) those parties who have filed a notice of appearance and request for service of pleadings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

32. No previous motion for the relief sought herein has been made to this or to any other court.

**WHEREFORE**, the Debtors respectfully request that this Court: (a) enter an Order, in the form submitted herewith, granting the relief requested herein; and (b) grant to the Debtors such other and further relief as the Court may deem proper.

Dated: October 16, 2013
      New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

*/s/ Wojciech F. Jung*
Kenneth A. Rosen, Esq.
Wojciech F. Jung, Esq.
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Proposed Counsel to the Debtors and
Debtors-in-Possession*