**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen
Wojciech F. Jung
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Mantara, Inc., *et al.*,[1] | Case No. 13-13370 (__) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING PRIVATE
SALE OF THE DEBTORS' INTELLECTUAL PROPERTY FREE AND
CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO SECTION
363 OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

Mantara, Inc. ("**Mantara**") and UNX LLC ("**UNX**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or the "**Company**"), hereby submit this motion (the "**Motion**") pursuant to Section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Amended Guidelines for the Conduct of Asset Sales, General Order M-383 of the Bankruptcy Court for the Southern District of New York (as such may have been amended, the "**SDNY Sale Guidelines**") for entry of an order substantially in the form submitted herewith (the "**Sale Order**") authorizing the (i) private sale of the Debtors' intellectual property and any rights related thereto (the "**IP Assets**") to

---

[1] The Debtors in these chapter 11 cases are Mantara, Inc. and UNX LLC. The last four digits of their federal tax identification number are 2570 and 6704 respectively.

-2-

Deutsche Bank Securities, Inc. (the "**Purchaser**")[2], pursuant to an Asset Purchase Agreement, dated as of October 16, 2013 (the "**Sale Agreement**," a copy of which is attached to the Sale Order as an exhibit), free and clear of liens, claims and encumbrances, and (ii) granting related relief.  In support of the Motion, the Debtors submit the *Declaration of Michael Chin in Support of First Day Applications and Motions* (the "**Chin Decl.**"), the Debtors' president and chief executive officer.  In further support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are Sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, Local Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the SDNY Sale Guidelines.

## BACKGROUND

4. On October 16, 2013 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").

5. The Debtors are operating their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. No trustee or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

---

[2] An affiliate of the Purchaser is a former member of Mantara's Board of Directors and the lender under the Debtors' proposed post-petition financing.

7.  Mantara, a Delaware corporation operating out of 215 Park Avenue South, Suite 2001, New York, NY 10003, is a software company that develops solutions for the financial services community. Mantara was formed in 2005 and spent the first 4 years developing an electronic trading platform to trade financial securities. In 2010, Mantara began to expand its product scope and client base by focusing on the high frequency trading community. In 2012, Mantara acquired UNX, a Delaware limited liability company. UNX is a software company that develops front-end trading tools for the institutional trading community. UNX is a wholly owned by Mantara.

8.  Additional background facts surrounding these Chapter 11 Cases are found in the Declaration of Michael Chin in Support of First Day Applications and Motions filed on the Petition Date.

**BACKGROUND RELEVANT TO THIS MOTION**

Marketing of IP Assets

9.  Since June 2013, the Debtors have extensively marketed their assets, including the IP Assets. Marketing the assets was particularly important and time sensitive as the Debtors' financial position was rapidly declining. Since the beginning of the marketing process, the Debtors reached out to approximately 43 parties, approximately 16 of whom executed confidentiality agreements and conducted various degrees of due diligence. Upon receiving executed confidentiality agreements from the 16 potential acquirers of Mantara, the Company immediately provided those parties with an "Investor Presentation," which included an in-depth description of Mantara's products and services, client base, business model and a financial summary. The Company conducted no less than ten (10) meetings between the end of June 2013 and mid-August 2013 with the parties that received the "Investor Presentation" and expressed an interest in continuing discussions. On August 22, 2013, the Company submitted

bid instruction letters to five (5) of the ten (10) potential suitors who verbally confirmed they would be interested in submitting a non-binding indicative bid. Ultimately, the Company received one letter of intent on August 30, 2013.

10. For the next four (4) weeks, the Company pursued the transaction contemplated by the August 30, 2013 letter of intent. Ultimately, however, that potential buyer officially dropped out of the bidding process on or about September 30, 2013.

11. The Purchaser expressed an interest in purchasing the IP Assets. After careful consideration of, and substantial negotiation related to, the Purchaser's $1.25 million offer for the IP Assets, coupled with the Debtors' declining financial position, the Debtors concluded that the offer was the highest and best offer, and for that matter, the only real purchase offer they had received. The Sale Agreement that the Debtors negotiated with the Purchaser contemplates that the Debtors would file these Chapter 11 Cases and that the sale transaction contemplated by the Sale Agreement would be effectuated through a sale pursuant to Section 363 of the Bankruptcy Code.

12. On the Petition Date, the Debtors filed a motion to assume the Sale Agreement under section 365 of the Bankruptcy Code. Assumption of the Sale Agreement is a condition precedent to the Debtors' ability to obtain post-petition financing and will entitle the Purchaser to an administrative expense claim for the deposit amount in case the Debtors do not sell their assets and otherwise do not refund the amount of the deposit to the Purchaser. As set forth in the Sale Agreement, the Debtors' assumption of the Sale Agreement does not foreclose the Debtors' ability to seek superior offers.

## THE PROPOSED SALE TERMS

13.     The negotiations between the Debtors and the Purchaser led to the execution of the Sale Agreement.  The substantive terms and conditions of the proposed sale to the Purchaser pursuant to the Sale Agreement are outlined below:[3]

| Provision | Description |
|---|---|
| **Property to be Purchased** | All of the Debtors' Intellectual Property and Intellectual Property Rights, whether registered or unregistered, whether or not reflected on the books or financial statements of the Sellers, that are (i) owned by any Seller or (ii) in-licensed by any Seller and incorporated into the Software used by any Seller in the conduct of the Business, and, in each instance in respect of clauses (i) and (ii), that are not Excluded Assets. For the avoidance of doubt, and without limiting the generality of the preceding sentence, the Acquired Assets shall include each and all Software and Intellectual Property related to the following: ExpressWay™ and the ExpressWay™ suite of applications (e.g. ExpressWay™ EMS, API, Risk, Brake and Connectivity), Catalyst™, the Nitro application, the Elvin applications, and any additional Intellectual Property and Intellectual Property rights acquired under each of the Seller Subsidiary Assignments and the UNX Purchase Agreement. |
| **Purchase Price** | $1,250,000.00 plus assumption of Assumed Liabilities (*i.e.*, liabilities arising out of or relating to the Buyer's ownership of the Acquired Assets after the Closing). |
| **Conditions to Closing** | The obligation of the Buyer to consummate the transactions contemplated by the Sale Agreement is subject to the satisfaction (or waiver by the Buyer in the Buyer's sole discretion) at or prior to the Closing Date of each of the following conditions: <br><br> Each of the representations and warranties of the Sellers contained in the Sale Agreement shall have been true and correct on the Effective Date, and each of the representations and warranties of the Sellers contained herein that are not, by |

---

[3] The following summary of the Sale Agreement is provided for the convenience of the Court and parties-in-interest and is not intended to substitute for a review of the Sale Agreement in its entirety.  To the extent that there are any inconsistencies between this summary and the Sale Agreement, the terms and language of the Sale Agreement shall govern.  Capitalized terms used in this Summary that are not defined in the Motion shall have the meanings ascribed to them in the Sale Agreement.

their terms, qualified by a materiality standard shall be true and correct in all material respects on and as of the Closing Date with the same force and effect as though such representations and warranties had been made on and as of the Closing Date (and each of the representations and warranties of the Sellers contained herein that are, by their terms, qualified by a materiality standard, shall be true and correct on and as of the Closing Date with the same force and effect as though such representations and warranties had been made on and as of the Closing Date), except to the extent that any such representation or warranty is expressly made as of a specified date, in which case such representation or warranty shall have been true and correct as of such specified date.

The Sellers shall have performed in all material respects all obligations and agreements contained in the Sale Agreement required to be performed by them on or prior to the Closing Date.

The Buyer shall have received certificates, dated the Closing Date, of an executive officer of each Seller to the effect that the conditions specified in Section 7.1(a) and Section 7.1(b) have been fulfilled.

The Sellers shall have executed and delivered to the Buyer the documents and other deliveries specified in Section 3.1(b).

There shall be no Law or Order that restrains or prevents the transactions contemplated by the Sale Agreement.

The Bankruptcy Court shall have entered the Sale Order, which shall be in form and substance acceptable to the Buyer in its sole and absolute discretion, and as of the Closing Date the Sale Order shall be in full force and effect and shall not have been reversed, vacated, or stayed, and shall not have been amended, supplemented, or otherwise modified in any material respect without the prior written consent of the Buyer.

The Sale Order shall be non-appealable and not otherwise subject to review, reversal, modification or amendment, by appeal or writ of certiorari. Notwithstanding anything herein to the contrary, the Buyer may, in its sole and absolute discretion, complete the transactions contemplated by the Sale Agreement prior to the Sale Order becoming a final non-appealable order of the Bankruptcy Court, *but only* to the

| | |
|---|---|
| | extent the Sale Order provides that the Buyer is a "Good Faith Purchaser" pursuant to Section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded to such purchasers by that Section.<br><br>The Final DIP Order shall be non-appealable and not otherwise subject to review, reversal, modification or amendment, by appeal or writ of certiorari.  Notwithstanding anything herein to the contrary, the Buyer may, in its sole and absolute discretion, complete the transactions contemplated by the Sale Agreement prior to the Final DIP Order becoming a final non-appealable order of the Bankruptcy Court, *but only* to the extent the Final DIP Order contains protections pursuant to Section 364(e) of the Bankruptcy Code in form and substance acceptable to the Buyer in its sole and absolute discretion.<br><br>VLL shall have released all Liens relating to the Acquired Assets in a form reasonably satisfactory to the Parties, and, the VLL Loan Documents shall have been terminated and be of no further force or effect.<br><br>Since the date of the Sale Agreement, there shall not have occurred any change, event, circumstance, development or effect that has had, individually or in the aggregate, a Material Adverse Effect. |
| **Deposit** | $100,000.00 |

| | |
|---|---|
| **Release of Claims** | The Debtors are releasing any and all claims that they may have against Purchaser, Purchaser's affiliates, and their respective parents, subsidiaries, affiliated persons (including current and former spouses and other family members), members, stockholders, equity holders, directors, officers, partners, managers, employees, agents and representatives and their successors and assigns. |
| **Closing** | Second Business Day after all of the conditions set forth in Article 7, other than those conditions that by their nature are to be satisfied at the Closing, have been either satisfied or waived by the Party entitled to waive such condition or on such other date as the Parties shall mutually agree.<br><br>The Sale Agreement contains an outside date of December 31, 2013. |

**PROPOSED FORM AND MANNER OF NOTICE**
**OF THE PRIVATE SALE AND SALE HEARING**

14. Bankruptcy Rule 6004(a) provides that notice of a proposed sale of property, other than in the ordinary course of business, shall be given to all known creditors and parties-in-interest pursuant to Bankruptcy Rules 2002(a)(2), (c), (i) and (k).

15. Bankruptcy Rule 2002(a)(2) provides that not less than twenty-one (21) days' notice by mail shall be given of a proposed sale of property of the estate other than in the ordinary course of business. Bankruptcy Rule 2002(c)(1) governs the contents of the notice of a proposed sale and requires that the notice include the terms and conditions of any private sale and the time fixed for filing objections. A general description of the property to be sold is also required. A notice of the sale (the "**Sale Notice**") which complies with the requirements of Section 363(f) of the Bankruptcy Code, Bankruptcy Rule 2002 and Local Bankruptcy Rule 6004-1(h), will, within five (5) business days of the date hereof, be served by first class mail upon the Notice Parties (defined below), and all relevant taxing authorities. Finally, the Debtors will provide a copy of the Sale Notice to all parties known to have expressed an interest in acquiring the IP Assets.

16. For the reasons described above, the Debtors seek to proceed to the Sale Hearing to approve the Sale Agreement with Purchaser. While the Debtors seek to sell the IP Assets to the Purchaser in a private sale, the Debtors are proposing to consider, and nothing in the Sale Agreement prevents the Debtors from considering, bids received up to five (5) days prior to the hearing on this Motion, and, if warranted, conducting an auction for the IP Assets at such hearing.[4] The Debtors have proposed fixing the time for filing objections, if any, to the

---

[4] The Debtors may seek Court approval of any third-party offer for the IP Assets that is a bona fide written offer made by any Person other than the Company, any Affiliate thereof, or any current or former officer, director or equity holder, or customer thereof that the Company Board determines in good faith, after consultation with the

proposed sale of the IP Assets as such date that is seven (7) days prior to the Sale Hearing, with objections, to the extent not resolved by the parties, to be considered at the Sale Hearing. In the event an objection is not timely filed and served, it will be forever barred and waived.

## BASIS FOR RELIEF

A.  **The Sale of the IP Assets Pursuant to the Sale Agreement is Authorized by Section 363 of the Bankruptcy Code as a Sound Exercise of the Debtors' Business Judgment**

17. Section 363 of the Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Although Section 363 does not articulate a standard for authorizing the sale or disposition of a debtor's assets, courts in the Second Circuit have found that the decision to sell assets outside the ordinary course of business should be based upon the sound business judgment of the debtor and, where that judgment has a reasonable basis, a court ordinarily should defer to that judgment in determining whether to approve a proposed transaction. *See In re Chrysler LLC*, 405 B.R. 84, 95-96 (Bankr. S.D.N.Y. 2009); *see In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Comm. Of Equity Security Holders v. Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 742 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 678-79 (Bankr. S.D.N.Y. 1989); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable

---

Company's outside legal counsel and financial advisors (if any), to be (i) more favorable from a financial point of view to the Debtors than the transactions contemplated by the Sale Agreement (taking into account all of the terms and conditions of such offer and the Sale Agreement (including any changes to the terms of the Sale Agreement proposed by Purchaser in response to such third-party offer, provided that any such other offer shall, at a minimum, be for cash consideration in an amount that exceeds the value of the Purchase Price by no less than $350,000.00, and (ii) reasonably likely to be consummated without undue delay relative to the transactions contemplated by the Sale Agreement, taking into account all financial, legal, regulatory and other aspects of such offer. Capitalized terms used here that are not defined in the Motion have the meanings ascribed to them in the Sale Agreement

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

18. As long as a valid business justification exists – as it does under the present circumstances – the decision to sell estate property is entitled to a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *In re Integrated Res., Inc.*, at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). This presumption results in courts giving substantial deference to the business decisions of debtors. *See In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw.")

19. As part of this analysis, courts may also consider (a) whether fair and reasonable consideration is provided, (b) whether the transaction has been proposed and negotiated in good faith, and (c) whether reasonable notice has been provided. *See In re Condere*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998); *see also In re Nicole Energy Servs., Inc.*, 385 B.R. 201, 210 (Bankr. S.D. Ohio 2008) (citations omitted); 3 COLLIER ON BANKRUPTCY ¶ 363.02[3] (15th ed. rev. 2009) ("It is now generally accepted that Section 363 allows such sales [of substantial portions of the debtor's assets] in chapter 11, as long as the sale proponent demonstrates a good, sound business justification for conducting the sale before confirmation (other than appeasement of the loudest creditor), that there has been adequate and reasonable notice of the sale, that the sale has been proposed in good faith, and that the purchase price is fair and reasonable.").

20. These factors are satisfied in this case. First, the sale consideration is fair and reasonable and was arrived at after an extensive marketing process, wherein the Debtors communicated with approximately 43 potential bidders, approximately 16 of which engaged in some amount of due diligence. In addition, the Sale Agreement is the result of extensive, protracted arm's length negotiations with the Purchaser. The Debtors are satisfied that the $1.25 million Purchase Price represents fair market value for the IP Assets. Ultimately, no other party was willing to agree to a purchase price and terms of sale that were higher and better than the terms of the Sale Agreement.

21. Second, the transaction is proposed in good faith. Although the Purchaser is an affiliate of a former board member of Mantara and a minority equity holder of Mantara, the Sale Agreement was negotiated at arms-length and in good faith. Both the Debtors and Purchaser were represented by sophisticated counsel with extensive experience in similar transactions.

22. Third, reasonable notice of the sale will have been provided and the Debtors will provide reasonable notice of this Motion as discussed above.

23. Sale of the IP Assets pursuant to the Sale Agreement will allow the Debtors to obtain the sale proceeds for the benefit of their estates, creditors and parties in interest.

B. **The Private Sale of the IP Assets is Warranted and Will Maximize the Value Received by the Debtors' Estates, Creditors and All Parties in Interest**

24. Bankruptcy Rule 6004(f) specifically contemplates and permits private sales. *See* Fed. R. Bankr. P. 6004(f)(1) ("[a]ll sales not in the ordinary course of business may be by private sale or by public auction").

25. Although many Section 363 sales are conducted subject to competitive bidding procedures and pursuant to public auction, courts have noted that private sales are appropriate under Section 363. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion to conduct public or private sales of estate property."); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect sales of estate property pursuant to Section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale ... and there is no requirement that the sale be by public auction"). Accordingly, courts in this District have approved private sales of assets when the general standards for approval under Section 363 of the Bankruptcy Code are satisfied. *See, e.g.*, *In re Christian Bros. Institute,* Case No. 11-22820 (RDD) (Bankr. S.D.N.Y. Nov. 7, 2012) (order authorizing and approving sale of certain real property via private sale where property was thoroughly marketed by broker for over nine months, no higher offers were received, and Debtors did not believe an auction process would generate any higher or better offers, especially considering costs associated with proceeding with auction and potential of losing the buyer); *In re Waterscape Resort LLC*, Case No. 10-11593 (SMB) (Bankr. S.D.N.Y. May 31, 2011) (order granting authority to debtor to assume and consummate property sale agreements); *In re Old Carco LLC (f/k/a Chrysler LLC)*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. Nov. 12, 2009) (order approving the sale of one of the debtors' assembly plants by private sale); *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (order approving the sale of one of the debtors' facilities' by private sale, not subject to higher and better offers); *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 29, 2005) (order authorizing the

sale of certain aircraft by private sale and stating that "no auction was necessary with respect to sale of the [a]ircraft").

26. In fact, the Southern District of New York has promulgated the SDNY Sale Guidelines (pursuant to General Order M-383). These guidelines explicitly state that they do not "express a preference for public over private sales as a means to maximize the sale price" of assets sold. *See* Guidelines, p.2 n.2. Importantly, while this is a private sale, as noted above, the Debtors are proposing to consider bids received up to five (5) days prior to the hearing on this Motion, and, if warranted, conduct an auction for the IP Assets at such hearing.

27. The SDNY Sale Guidelines require disclosure of certain "Extraordinary Provisions," pertaining to the conduct of asset sales, which ordinarily will not be approved without good cause shown for such Extraordinary Provisions and reasonable notice. Such extraordinary provisions include the following provision relevant to the sale of the IP Assets:

> <u>Sale to Insider</u>. If the motion proposes a sale to an insider, as defined in the Bankruptcy Code, the motion must disclose what measures have been taken to ensure the fairness of the sale process and the proposed transaction.
>
> <u>Interim Arrangements with Proposed Buyer</u>. If a debtor is entering into any interim agreements or arrangements with the proposed purchaser, such as interim management arrangements (which, if out of the ordinary course, also must be subject to notice and a hearing under Section 363(b) of the Bankruptcy Code), the sale motion must disclose the terms of such agreements.
>
> <u>Requested Findings as to Successor Liability</u>. If the debtor seeks findings limiting the purchaser's successor liability, the sale motion must disclose the adequacy of the debtor's proposed notice of such requested relief and the basis for such relief . . .
>
> <u>Relief from Bankruptcy Rule 6004(h)</u>. If the debtor seeks relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h), the sale motion must disclose the business or other basis for such request.

28. As noted herein, the Debtors are proposing to sell the IP Assets to an affiliate of an insider. Courts considering sales to insiders have noted that insider sales are not *per se* invalid, but they are, however, subject to careful scrutiny. *See In re Medical Software Solutions*, 286 B.R. 431, 445 (Bankr. D. Utah 2002) (noting that "[i]t is not bad faith per se for an insider to purchase property from an estate, even where the insider has a fiduciary duty to the estate") (internal citation omitted); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 498 (Bankr. S.D.N.Y. 1991) (noting that insider agreements are subject to closer scrutiny). The Debtors submit that because of the extensive marketing and good faith arm's length negotiation described *supra*, together with the fact that the Debtors were unable to obtain any other serious offer for the IP Assets, let alone a higher or better offer, the proposed sale, satisfies even careful scrutiny.

29. With respect to interim arrangements with the Purchaser, the Debtors note that their proposed debtor in possession lender is an affiliate of the Purchaser. Such lender is providing critical funds to enable the Debtors to consummate the sale process for the benefit of the Debtors' creditors and other stakeholders. The debtor-in-possession financing provided by the purchaser's affiliate will also enable the Debtors to take advantage of a reduced pay-off amount that the Debtors have negotiated with their prepetition lender but that is subject to a time limit, such that the pay-off must be made well before a sale process could be completed.

30. With regard to the no successor liability finding, the Purchaser has made that a condition to consummation of the Sale, and, as such, it is a necessary component of the Sale.

31. The Debtors' rationale for seeking a waiver of the Bankruptcy Rule 6004 14-day stay is discussed *infra*.

32. Ultimately, for all of the reasons discussed herein, the Debtors have determined, within their reasonable business judgment, that pursuant to the Sale Agreement they have maximized the sale price for the IP Assets and that it should be approved.

C.  The Sale of the IP Assets Should Be Free and Clear of
    Liens, Claims and Encumbrances

33. The Debtors request that the sale and transfer of the IP Assets be approved free and clear of all liens, claims, encumbrances and other interests, whether arising pre- or post-petition, other than those specifically assumed by Purchaser, with any such liens or interests attaching to the proceeds of the sale. Such relief is consistent with the provisions of Section 363(f), which authorizes a debtor to sell assets free and clear of interests in property of an entity other than the estate if:

> (i)    applicable nonbankruptcy law permits a sale of such property free and clear of such interest;
>
> (ii)   such entity consents;
>
> (iii)  such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
>
> (iv)   such interest is in *bona fide* dispute; or
>
> (v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

34. Because Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five (5) requirements will suffice to permit the sale of the IP Assets "free and clear" of interests. *See, e.g., Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991); *see also Contrarian Funds, LLC v. Westpoint Stevens, Inc. (In re Westpoint Stevens, Inc.),* 333 B.R. 30, 50 (S.D.N.Y. 2005) ("Where ...a sale is to be free and clear of existing liens and interests

other than those of the estate, one or more of the criteria specified in Section 363(f) of the statute must also be met."); *see also Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of § 363(f) are met, the Trustee has the authority to conduct the sale free and clear of all liens."); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[S]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met.").

35.    The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to Section 105 of the Bankruptcy Code, even if Section 363(f) of the Bankruptcy Code did not apply. *See In re Trans World Airlines. Inc.*, No. 01-0056, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("Bankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f)."); *see also Volvo White Truck Corp. v. Chambersberg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

36.    The IP Assets are subject to prior liens and security interests of Venture Lending & Leasing VI, Inc. (the "Prepetition Lender"). The Prepetition Lender has consented or is expected to consent to the sale of the IP Assets pursuant to the Sale Agreement. Furthermore, the Debtor's obligations to the Prepetition Lender are expected to be repaid from the Debtor's proposed post-petition financing, which is expected to occur prior to the closing on the sale of the IP Assets. The Debtors are not aware of any other liens, claims, encumbrances or interests in or upon the IP Assets. If any such lien, claim, encumbrance of interest should exist, the Debtors

submit that such each lien, claim, encumbrance or other interest in the IP Assets is subject to one or more of the provisions of section 363(f). For the reasons stated herein, section 363(f) authorizes the sale of the IP Assets free and clear of all such liens, claims, encumbrances and interest.

D.  Purchaser Should be Afforded All Protections Under Section 363(m) as a Good Faith Purchaser and the Proposed Sale Transaction Does Not Violate Section 363(n) Of The Bankruptcy Code

37.  Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor even if the sale conducted under Section 363(b) is later reversed or modified on appeal. Specifically, Section 363(m) states that:

> The reversal or modification on appeal of an authorization under [Section 363(b)] ... does not affect the validity of a sale ... to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Chateaugay Corp.*, No. 92 CIV. 7054 (PKL), 1993 WL 159969, at *3 (S.D.N.Y. May 10, 1993) (quoting *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 at 147); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

38.  The selection of the Purchaser and the execution of the Sale Agreement were the product of extensive arm's-length, good-faith negotiations between the Debtors and the

-17-

Purchaser. The Debtors submit that the Purchaser is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code.

39. Section 363(n) of the Bankruptcy Code allows a trustee to avoid a Section 363 sale where there has been collusion among bidders. Because the marketing process that led to the Sale Agreement with Purchaser was conducted in good faith and at arm's length and was not tainted by collusion, Section 363(n) is inapplicable.

### WAIVER OF BANKRUPTCY RULES 6004(h)

40. To implement the sale of the IP Assets described above successfully, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

41. The Debtors seek a waiver of the fourteen-day stay because the receipt of the proceeds of the sale of the IP Assets will provide the Debtors with critical funds necessary to consummate the Debtors' Chapter 11 objectives. Furthermore, the Sale Agreement provides a strict timeline for the closing of the sale. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### NOTICE

42. Notice of this Motion has or will be been given to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Internal Revenue Service; (iii) New York State Attorney General's Office; (iv) the Debtors' secured creditors; (v) all other

known creditors of the Debtors, and (vi) all known current and former employees of the Debtors with potential interest in the Acquired Assets (collectively, the "**Notice Parties**").

## **NO PRIOR REQUEST**

43. No previous motion for the relief sought herein has been made to this or to any other court.

**WHEREFORE**, the Debtors respectfully request that this Court: (a) enter an order in the form submitted herewith granting the relief requested herein; and (b) grant to the Debtors such other and further relief as the Court may deem proper.

Dated: October 16, 2013
New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

*/s/ Wojciech F. Jung*
Kenneth A. Rosen
Wojciech F. Jung
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Proposed Counsel to the Debtors and Debtors-in-Possession*