Hearing Date:  October 24, 2013 at 10:00 a.m. (prevailing Eastern Time)

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Wojciech F. Jung, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Mantara, Inc. *et al.*, [1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 13-13370 (ALG)<br><br>(Jointly Administered) |

**NOTICE OF HEARING ON DEBTORS' MOTION FOR ENTRY OF AN ORDER (A)**
**APPROVING BIDDING PROCEDURES, (B) APPROVING BID PROTECTIONS, (C)**
**SCHEDULING BID DEADLINES AND AN AUCTION, AND**
**(D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

PLEASE TAKE NOTICE that, on October 21, 2013, the Debtors filed the

*Debtors' Motion For Entry Of An Order (A) Approving Bidding Procedures, (B) Approving Bid*

*Protections, (C) Scheduling Bid Deadlines And An Auction, And (D) Approving The Form And*

*Manner Of Notice Thereof* (the "**Bidding Procedures Motion**").

PLEASE TAKE FURTHER NOTICE that a hearing on the Bidding Procedures

Motion will be held before the Honorable Allan L. Gropper, United States Bankruptcy Judge, at

the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton

---

[1] The Debtors in these chapter 11 cases are Mantara, Inc. and UNX LLC.  The last four digits of their federal tax identification number are 2570 and 6704 respectively.

Customs House, One Bowling Green, Room 617, New York, New York 10004-1408 (the "**Bankruptcy Court**") on October 24, 2013 at 10:00 a.m. (ET) (the "**Hearing**").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief sought in the Bidding Procedures Motion may be presented prior to or at the Hearing on the Bidding Procedures Motion.  Any objection filed prior to the Hearing shall be served upon (i) the chambers of the Honorable Allan L. Gropper, One Bowling Green, New York, New York 10004; (ii) attorneys for the Debtors, Lowenstein Sandler LLP, Attn: Wojciech F. Jung, Esq., (by e-mail wjung@lowenstein.com) and 1251 Avenue of the Americas, New York, New York 10020 and 65 Livingston Avenue, Roseland, New Jersey 07068; and (iii) the Office of the United States Trustee for the Southern District of New York, Attn:  Michael Driscoll, Esq.

PLEASE TAKE FURTHER NOTICE if no objections are filed prior to the Hearing or raised at the Hearing, the relief sought in the Bidding Procedures Motion may be entered with no further notice or opportunity to be heard.

Dated:  October 21, 2013
        New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

*/s/ Wojciech F. Jung*
Kenneth A. Rosen, Esq.
Wojciech F. Jung, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

-2-

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Wojciech F. Jung, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Mantara, Inc. *et al.*, [1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 13-13370 (ALG)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING BIDDING**
**PROCEDURES, (B) APPROVING BID PROTECTIONS, (C) SCHEDULING BID**
**DEADLINES AND AN AUCTION, AND**
**(D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), file

this motion (this "Motion") for entry of an order, substantially in the form submitted herewith as

**Exhibit A** (the "Bidding Procedures Order"), (a) approving the bidding procedures (the "Bidding

Procedures") for the solicitation and consideration of higher or otherwise better bids (each a

"Bid"); (b) approving the break-up fee and the expense reimbursement (the "Bid Protections");

(c) scheduling submission deadlines for any Bids and an auction (the "Auction"), if necessary;

(d) approving the form and manner of notice thereof; and (e) granting such other and further

relief as is just and proper. In further support of this Motion, the Debtors respectfully state as

---

[1] The Debtors in these chapter 11 cases are Mantara, Inc. and UNX, LLC. The four digits of their federal tax
    identification number are 2570 and 6704 respectively.

follows.

## Jurisdiction

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. § 1408.

3.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4.      On October 16, 2013 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

6.      On the Petition Date, the Debtors filed the *Debtors' Emergency Motion For Entry Of An Order Authorizing The Debtors To Assume Asset Purchase Agreement For The Sale Of Certain Intellectual Property Pursuant To Sections 105(a) And 365 Of The Bankruptcy Code And Bankruptcy Rules 6003 And 6006* (the "Assumption Motion") [Docket No. 4].

7.      Also on the Petition Date, the *Debtors Filed The Debtors' Motion For Entry Of Order Authorizing Private  Sale Of The Debtors' Intellectual Property Free And Clear Of Liens, Claims And Encumbrances Pursuant To Section 363 Of The Bankruptcy Code And Granting Related Relief* (the "Sale Motion") [Docket No. 8].

8.       On the Petition Date, the Debtors filed a *Declaration of Michael Chin in Support of First Day Applications and Motion* [Docket No. 3] and a *Declaration Of Michael Chin In Support Of Debtors' Motion For Entry Of Order Authorizing Private Sale Of The Debtors' Intellectual Property Free And Clear Of Liens, Claims And Encumbrances Pursuant To Section 363 Of The Bankruptcy Code And Granting Related Relief* [Docket No. 8] (collectively, the "Chin Declarations").

9.       On October 21, 2013, the Court entered an order [Docket No. 15] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

## Relief Requested

10.       By this Motion, the Debtors respectfully seek entry of an order:  (a) approving the Bidding Procedures; (b) approving the Bid Protections; (c) scheduling submission deadlines for any Bids and an Auction, if necessary; (d) approving the form and manner of notice thereof; and (e) granting such other and further relief as is just and proper.

## The Debtors' Marketing Efforts and Stalking Horse Selection Process

**A.    Background.**

11.       As the Debtors have previously disclosed in the Sale Motion and the Assumption Motion filed on the Petition Date, the Debtors filed these chapter 11 cases principally to implement a sale of their intellectual property assets (the "Acquired Assets") to Deutsche Bank Securities, Inc. (the "Purchaser") pursuant to an Asset Purchase Agreement dated October 16, 2013 (the "Asset Purchase Agreement"). A copy of the Asset Purchase Agreement is annexed to the Bidding Procedures Order as **Exhibit A**.

12.       At the hearing held on October 21, 2013, the Court expressed reluctance in approving the relief sought in the Assumption Motion.  As such, as discussed at the October 21,

2013 hearing, the Debtors are filing this Motion in furtherance of the relief sought in the Sale

Motion and in lieu of relief pursued in the Assumption Motion.

**B.    The Debtors' Marketing Process.**

13.    As set forth in the Chin Declarations, since June 2013, the Debtors have

extensively marketed their assets, including the Acquired Assets.  Marketing the assets was

particularly important and time sensitive as the Debtors' financial position was rapidly declining.

Since the beginning of the marketing process, the Debtors reached out to approximately 43

parties, approximately 16 of whom executed confidentiality agreements and conducted various

degrees of due diligence.  Upon receiving executed confidentiality agreements from the 16

potential acquirers of the Debtors, the Debtors immediately provided those parties with an

"Investor Presentation," which included an in-depth description of the Debtors' products and

services, client base, business model and a financial summary.  The Debtors conducted no less

than ten (10) meetings between the end of June 2013 and mid-August 2013 with the parties that

received the "Investor Presentation" and expressed an interest in continuing discussions.  On

August 22, 2013, the Debtors submitted bid instruction letters to five (5) of the ten (10) potential

suitors who verbally confirmed they would be interested in submitting a non-binding indicative

bid.  Ultimately, the Company received one letter of intent on August 30, 2013.

14.    For the next four (4) weeks, the Debtors pursued the transaction contemplated by

the August 30, 2013 letter of intent.  Ultimately, however, that potential buyer officially dropped

out of the bidding process on or about September 30, 2013.

15.    The Purchaser expressed an interest in purchasing the Acquired Assets.  After

careful consideration of, and substantial negotiation related thereto, the Purchaser's $1.25 million

offer for the Acquired Assets, coupled with the Debtors' declining financial position, the Debtors

concluded that the Purchaser's offer was the highest and best offer, and for that matter, the only

real purchase offer they had received.  The Asset Purchase Agreement that the Debtors negotiated with the Purchaser contemplates that the Debtors would file these Chapter 11 Cases and that the sale transaction contemplated by the Asset Purchase Agreement would be effectuated through a sale pursuant to Section 363 of the Bankruptcy Code.

**C.    Bid Protections:**

16.    The Debtors and the Purchaser have engaged in extensive, arm's-length, good-faith negotiations on the terms of the Asset Purchase Agreement.  The Purchaser has agreed to serve as a stalking horse bidder in connection with the sale of the Acquired Assets.  As discussed at the October 21, 2013 hearing, the Debtors are proposing certain Bid Protections as compensation for the effort and expenses incurred by the Purchaser with respect to the Asset Purchase Agreement. The Bid Protections were contemplated by the Purchaser as a means to induce to the Purchaser to enter into the Asset Purchase Agreement.  However, the parties decided to pursue relief under the Assumption Motion instead.  Now, because the parties no longer wish to pursue the relief set forth in the Assumption Motion, the Purchaser requests approval of the Bid Protections via the Bidding Procedures.

17.    The Debtors have undertaken significant marketing efforts to date, spent significant time and energy negotiating with the Purchaser, and are now prepared to move forward with a competitive auction process that will hopefully culminate in a formal auction that produces the highest or otherwise best Bid.  To facilitate the formal auction process, the Debtors, have developed Bidding Procedures that will subject the Purchaser to a market test over the period following approval of the relief requested in this Motion.  In the event the Debtors receive qualified competing Bids as set forth in the Bidding Procedures Order, the Debtors will conduct the Auction, and the Purchaser and all other qualified bidders will have the opportunity to participate in a competitive process and submit their final and best offers for the Acquired

Assets. The Debtors believe that the terms of the proposed Bidding Procedures are fair, reasonable and market based.

### Overview of the Proposed Sale[3]

18.    The principal terms of the Asset Purchase Agreement are summarized in the following chart:[4]

| | Summary Description |
|---|---|
| **Property to be Purchased** | • All of the Debtors' Intellectual Property and Intellectual Property Rights, whether registered or unregistered, whether or not reflected on the books or financial statements of the Sellers, that are (i) owned by any Seller or (ii) in-licensed by any Seller and incorporated into the Software used by any Seller in the conduct of the Business, and, in each instance in respect of clauses (i) and (ii), that are not Excluded Assets. For the avoidance of doubt, and without limiting the generality of the preceding sentence, the Acquired Assets shall include each and all Software and Intellectual Property related to the following: ExpressWay™ and the ExpressWay™ suite of applications (e.g. ExpressWay™ EMS, API, Risk, Brake and Connectivity), Catalyst™, the Nitro application, the Elvin applications, and any additional Intellectual Property and Intellectual Property rights acquired under each of the Seller Subsidiary Assignments and the UNX Purchase Agreement. |
| **Purchase Price** | • $1,250,000.00 plus assumption of Assumed Liabilities (*i.e.*, liabilities arising out of or relating to the Purchaser's ownership of the Acquired Assets after the Closing). |
| **Deposit** | • $100,000 deposit |
| **Conditions to Closing** | The obligation of the Purchaser to consummate the transactions contemplated by the Asset purchase Agreement is subject to the satisfaction (or waiver by the Buyer in the Buyer's sole discretion) at or prior to the Closing Date of each of the following conditions:<br><br>• Each of the representations and warranties of the Sellers contained in the Asset Purchase Agreement shall have been true and correct on the Effective Date, and each of the representations and warranties of the Sellers contained herein that are not, by their terms, qualified by a materiality standard shall be true and correct in all material respects on and as of the Closing Date with the same force and effect as though such representations and warranties had been made on and as of the Closing Date (and each of the representations and warranties of the Sellers contained herein that are, by their terms, qualified by a materiality standard, shall be true and correct on and as of the Closing Date with the same force and effect as though such representations and warranties had been made on and as of the Closing Date), except to the extent that any such representation or warranty is expressly made as of a specified date, in which case such representation or warranty shall have been true and correct as of such specified date.<br><br>• The Sellers shall have performed in all material respects all obligations and agreements |

---

[3]    Capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Asset Purchase Agreement.

[4]    This summary is provided for the convenience of the Court and parties in interest. To the extent there is any conflict between this summary and the Asset Purchase Agreement, the latter governs in all respects.

| Summary Description |
|---|

<table>
<tr><td></td><td>

contained in the Asset Purchase Agreement required to be performed by them on or prior to the Closing Date.

- The Purchaser shall have received certificates, dated the Closing Date, of an executive officer of each Seller to the effect that the conditions specified in <u>Section 7.1(a)</u> and <u>Section 7.1(b)</u> have been fulfilled.

- The Sellers shall have executed and delivered to the Purchaser the documents and other deliveries specified in <u>Section 3.1(b)</u>.

- There shall be no Law or Order that restrains or prevents the transactions contemplated by the Asset Purchase Agreement.

- The Bankruptcy Court shall have entered the Sale Order, which shall be in form and substance acceptable to the Purchaser in its sole and absolute discretion, and as of the Closing Date the Sale Order shall be in full force and effect and shall not have been reversed, vacated, or stayed, and shall not have been amended, supplemented, or otherwise modified in any material respect without the prior written consent of the Purchaser.

- The Sale Order shall be non-appealable and not otherwise subject to review, reversal, modification or amendment, by appeal or writ of certiorari.  Notwithstanding anything herein to the contrary, the Purchaser may, in its sole and absolute discretion, complete the transactions contemplated by the Asset Purchase Agreement prior to the Sale Order becoming a final non-appealable order of the Bankruptcy Court, *but only* to the extent the Sale Order provides that the Purchaser is a "Good Faith Purchaser" pursuant to Section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded to such purchasers by that Section.

- The Final DIP Order shall be non-appealable and not otherwise subject to review, reversal, modification or amendment, by appeal or writ of certiorari.  Notwithstanding anything herein to the contrary, the Purchaser may, in its sole and absolute discretion, complete the transactions contemplated by the Asset Purchase Agreement prior to the Final DIP Order becoming a final non-appealable order of the Bankruptcy Court, *but only* to the extent the Final DIP Order contains protections pursuant to Section 364(e) of the Bankruptcy Code in form and substance acceptable to the Purchaser in its sole and absolute discretion.

- VLL shall have released all Liens relating to the Acquired Assets in a form reasonably satisfactory to the Parties, and, the VLL Loan Documents shall have been terminated and be of no further force or effect.

- Since the date of the Asset Purchase Agreement, there shall not have occurred any change, event, circumstance, development or effect that has had, individually or in the aggregate, a Material Adverse Effect.

</td></tr>
<tr><td>**Closing Date**</td><td>

- Second Business Day after all of the conditions set forth in Article 7, other than those conditions that by their nature are to be satisfied at the Closing, have been either satisfied or waived by the Party entitled to waive such condition or on such other date as the Parties shall mutually agree.

- The Asset Purchase Agreement contains an outside date of December 31, 2013.

</td></tr>
</table>

## Bidding Procedures Order

**A.    Outline of the Bidding Procedures.**

19.    With a bidding floor set by the Purchaser, the Debtors propose to subject the

Purchaser to a formal, competitive bidding process to ensure that the Debtors maximize the

13-13370-alg    Doc 19    Filed 10/21/13    Entered 10/21/13 22:32:14    Main Document
Pg 10 of 19

likelihood of obtaining a value-maximizing transaction or transactions.  The Bidding Procedures

allow entities with a potential interest in purchasing all or a subset of the Debtors' Acquired

Assets both notice and sufficient time to conduct or finalize due diligence and to submit binding

Bids by the conclusion of the bidding period.  The Debtors also believe that the Bidding

Procedures will provide them with sufficient time to develop and assess such Bids.  The Bidding

Procedures and the Auction process are designed to encourage all entities to put their best Bids

forward, bring finality to the Debtors' competitive sale process, and create a path towards the

highest and best available recoveries to the Debtors' constituents.  The salient points of the

Bidding Procedures are as follows:[5]

I.      Bid Deadline: The Debtors are authorized to consider any Superior Proposals (as defined in the Asset Purchase Agreement) that are actually received by the Debtors prior to **4:00 p.m. prevailing Eastern Time on November 15, 2013** (the "Bid Deadline")[6] by e-mail (wjung@lowenstein.com) and other modes of delivery to Lowenstein Sandler LLP, Attn:  Wojciech F. Jung, Esq., 1251 Avenue of the Americas, 17th Floor, New York, NY 10020; provided, however, that the definition of "Superior Proposal" set forth the Asset Purchase Agreement is hereby modified such that any such offer proposal, at a minimum, be for cash consideration in an amount that exceeds the value of the Purchase Price (as defined in the Asset Purchase Agreement) by no less than $125,000.00 (instead of $350,000).  All Superior Proposals shall be accompanied by a redline of the Asset Purchase Agreement.

II.     No Superior Proposals.  If no Superior Proposals are received by the Bid Deadline, then the Auction will not occur, the Purchaser will be deemed the Successful Bid and, subject to the terms of the Asset Purchase Agreement, the Debtors will pursue entry of an order by the Bankruptcy Court effectuating the sale contemplated in the Asset Purchase Agreement, pursuant to the terms thereof, as soon as practicable.

III.    Auction.  If any Superior Proposals are received by the Debtors prior to the Bid Deadline, the Debtors shall conduct an auction (the ("Auction") for the sale of the Acquired Assets starting at **11:00 a.m. prevailing Eastern Time on November**

---

[5]   This summary is qualified in its entirety by the Bidding Procedures embodied in the Bidding Procedures Order. All capitalized terms that are used in this summary but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

[6] The Bid Deadline may be extended by prior agreement of the Debtors.

**19, 2013**. The Auction shall take place as the offices of Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17ᵗʰ Floor, New York, NY 10020. At the conclusion of the Auction the Debtors, after consultation with the creditors committee that may be appointed in these chapter 11 cases (the "Committee"); shall select the highest and best bid.

IV.     Selection of the Successful Bid. Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment shall identify the highest or otherwise best Superior Proposal (the "Successful Bid").

V.      Bid Increments. At the Auction, participants (including Purchaser) will be permitted to increase their bids. Bidding will start at the highest purchase price received by the Debtors prior to the Auction and will proceed thereafter in increments of $100,000.

VI.     Bid Protections. In the event a sale of the Acquired Assets to a buyer other than the Purchaser pursuant to a Superior Proposal is approved by this Court, the Debtors shall pay, from the first proceeds of such sale or any sale thereafter consummated with a Third-Party Purchaser, an amount equal to (i) the then-outstanding DIP Obligations (as defined in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), and 365(e); (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (IV) Granting Related Relief*, entered concurrently herewith (the "DIP Order")), *plus* (ii) $50,000 to the Purchaser as compensation for the time expended and expenses incurred by the Purchaser in negotiating the Asset Purchase Agreement and performing due diligence in connection therewith and in recognition of the additional value generated for the estate by virtue of the Purchaser's offer to acquire the Acquired Assets.

20.     Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize value, and, as such, do not impair the Debtors' ability to consider all qualified bid proposals, and preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for their estates in consultation with key parties as set forth therein.

**B.     Auction Notice.**

21.     The Debtors respectfully submit that the notice of the Auction, substantially in the form attached as **Exhibit B** to the Bidding Procedures Order (the "Auction Notice"), complies

with Bankruptcy Rule 2002(c) and includes such information regarding the Bidding Procedures as is necessary to enable interested parties to participate in the Auction.

22.     Should the Court enter the Bidding Procedures Order, on or before October 28, 2013, the Debtors will provide copies of the Notice of the Sale Hearing, together with the Asset Purchase Agreement, the Sale Procedures, the Sale Motion, to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Internal Revenue Service; (iii) New York State Attorney General's Office; (iv) the Debtors' secured creditors; (v) each of the Debtor's 20 largest non-insider creditors, (vi) all known current and former employees of the Debtors with potential interest in the Acquired Assets, and (vii) all parties who have expressed interest in the Acquired Assets, and such notice shall constitute due, proper, timely, adequate and sufficient notice thereof.

### Basis for Relief

**A.     Section 363(b) of the Bankruptcy Code Governs the Use of Estate Property.**

23.     The Court may authorize the Debtors to enter into the Asset Purchase Agreement and approve the Bidding Procedures and the Bid Protections pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b)(1).  Section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate.  However, the United States Court of Appeals for the Second Circuit has required that the authorization of such use, sale, or lease of property of the estate, not in the ordinary course of business, must be based upon the sound business judgment of the debtor.  *See Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel*

*Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification"

to approve the use, sale, or lease of property outside the ordinary course of business).  In that

regard, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct

from a decision made arbitrarily or capriciously), courts will generally not entertain objections to

the debtor's conduct."  *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville*

*Corp. (In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

24.      Once a debtor articulates a valid business justification for its actions, courts in the

Second Circuit "give great deference to the substance of the directors' decision and will not

invalidate the decision, will not examine its reasonableness, and will not substitute its views for

those of the board if the latter's decision can be attributed to any rational business purpose."  *In*

*re Global Crossing Ltd.*, 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) (citing *Paramount*

*Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 45 n.17 (Del. 1994)); *accord Official Comm.*

*of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.*), 147 B.R. 650,

656 (S.D.N.Y. 1992) (presuming, based on the business judgment rule, "that in making a

business decision the directors of [the debtor] acted on an informed basis, in good faith and in the

honest belief that the action was in the best interests of the company") (quoting *Smith v. Van*

*Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *In re Johns-Manville Corp.*, 60 B.R. at 616.  Thus, if a

debtor's actions satisfy the business judgment rule, then the transaction in question should be

approved and authorized under section 363(b)(1).

      **(i)**      **Entering into the Asset Purchase Agreement is a Sound Exercise of the**
                         **Debtors' Business Judgment.**

25.      The Debtors respectfully submit that their decision to seek authority to enter into

the Asset Purchase Agreement is an exercise of sound business judgment.  By entering into the

Asset Purchase Agreement, the Debtors are securing a transaction that contemplates a $1.25

million stalking horse bid by the Purchaser for the Debtors' Acquired Assets.  As described

above, the Asset Purchase Agreement represents the culmination of arms-length negotiations

between the Debtors and the Purchaser.  The Debtors believe that, as a result of those

negotiations, they have obtained the best stalking horse proposal possible under the

circumstances.

26.    The Purchaser provides the best potential recoveries to the Debtors' constituents

as of the date hereof, with an opportunity to increase recoveries in accordance with the overbid

process set forth in the Bidding Procedures.  Indeed, entering into the Asset Purchase Agreement

provides the benefit of a threshold bid which will facilitate a successful conclusion to these

chapter 11 cases.  The Debtors believe that entering into the Asset Purchase Agreement is a

proper exercise of their fiduciary duties.  Accordingly, the Debtors respectfully submit that entry

into the Asset Purchase Agreement is a sound exercise of the Debtors' reasonable business

judgment.

**(ii)    The Bidding Procedures Will Facilitate a Process that Maximizes Value.**

27.    The Bidding Procedures are also the product of negotiations between the Debtors

and the Purchaser.  The Debtors and the Purchaser believe that the Bidding Procedures will

enable potential bidders to submit bids that increase recoveries to constituents by providing

flexible parameters than enable potential purchasers to acquire some or all of the Debtors'

Acquired Assets through a transaction structure that will maximize value for all of the Debtors'

stakeholders.  The Bidding Procedures also expressly maintain the Debtors' ability to facilitate

the submission of Superior Proposals, which may lead to a spirited Auction between competing

bidders.

28.    As such, potential bidders, including those already involved and new entities that

have or may express interest, will have adequate time to conduct due diligence, arrange

financing, and construct and submit informed competing bids.  Importantly, the Bidding

Procedures also expressly reserve the Debtors' ability to exercise their fiduciary duties, if

necessary.

29.    Accordingly, the Debtors believe the Bidding Procedures and the Auction will

provide the Debtors' marketing process with finality and ensure that these chapter 11 cases

culminate in a chapter 11 plan that maximizes value to the extent practicable.

**(iii)    The Proposed Bid Protections are Appropriate Under the Circumstances.**

30.    In connection with the Asset Purchase Agreement, the Debtors are also seeking

authority to pay the Bid Protections (a break-up fee and expense reimbursement) if the Purchaser

is not the successful bidder at the Auction for the Acquired Assets in order to provide the

Purchaser certain benefits which were contemplated when the parties entered into the Asset

Purchase Agreement and filed the Assumption Motion.

31.    In *Integrated Resources*, the United States District Court for the Southern District

of New York adopted a three-factor test for evaluating approval of a break-up fee that has been

widely used by courts in this District.[7]  Under this test, a court should ask the following three

questions in deciding whether to approve break-up fee provisions:  "(1) is the relationship of the

parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee

hamper, rather than encourage, bidding; [and] (3) is the amount of the fee unreasonable relative

to the proposed purchase price?" *See In re Integrated Res.*, 147 B.R. at 656-57.

---

[7]    *See, e.g.*, *In re Innkeepers USA Trust*, No. 10-13800 (SCC) (Bankr. S.D.N.Y. Mar. 11, 2011) [Docket No. 1009]; *In re Tronox Inc.*, No. 09-10156 (ALG) (Bankr. S.D.N.Y. Sept. 23, 2009) [Docket No. 715]; *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. Jan. 14, 2010) [Docket No. 1761]; *In re DBSD N. Am., Inc.*, No. 09-13061 (REG) (Bankr. S.D.N.Y. July 22, 2009) [Docket No. 222]; *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. May 15, 2009) [Docket No. 398]; *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. July 26, 2006) [Docket No. 2340].

32.     Here, the Debtors respectfully submit that the *Integrated Resources* factors have

been satisfied and that the Bid Protections should be approved.  *First*, the parties negotiated the

Asset Purchase Agreement, and subsequently the Bidding Procedures (including the Bid

Protections), at arm's-length and in good faith.  In addition, the Purchaser agreed to enter into the

Asset Purchase Agreement only if the Court approves the Assumption Motion.  While the parties

initially contemplated providing the Purchaser Bid Protections via the Assumption Motion (*i.e.*

by providing administrative expense status to the deposit), the Debtors submit that the Bid

Protections were a necessary requirement to induce the Purchaser to pursue the acquisition of the

Acquired Assets under the Asset Purchase Agreement.  The Debtors believe that the value of

having a stalking horse act as a floor bid is well worth the Bid Protections, and that the

Purchaser's demand of the Bid Protections was not unreasonable in light of its commitment to

serve as a stalking horse for the Debtors' sale process prior to the Petition Date and subject its

bid to the delay and risks inherent in an Auction.

33.     *Second*, the Bid Protections will not hamper any other party's ability to offer a

higher or better bid.  Given the size of the Bid Protections relative to the total amount of

consideration, the Bid Protections are not so large as to have a "chilling effect" on other

prospective bidders' interest.  In fact, the Bid Protections and the corresponding auction process

will actually increase the likelihood of competitive bidding at the Auction by establishing a floor

price, or an initial indication of value, against which other bidders can assess their interest.

34.     *Third*, the Debtors believe that the Bid Protections are reasonable and appropriate

relative to the size and nature of the proposed transaction and the Debtors' chapter 11 cases.  The

potential $50,000 fee (which includes both a break-up fee and expense reimbursement

components) is only 4 percent of the Purchaser's $1.25 million commitment to purchase the

Acquired Assets.  In addition, these Bid Protections were expressly contemplated in negotiating the Asset Purchase Agreement and the Assumption Motion.  Further, the Debtors' estates will not be negatively impacted by any such reimbursement by the successful bidder.  The Bid Protections fall within the range of break-up fees and expense reimbursements approved by courts in this district and elsewhere.  *See, e.g.*, *In re Extended Stay, Inc.*, No. 09-13764 (JMP) (Bankr. S.D.N.Y. Apr. 23, 2010)  (approving liquidated damages of 10% of overall enterprise value to successful bidder and expense reimbursement of up to $10 million if plan is withdrawn or investment agreement terminated); *In re Cabrini Med. Ctr.,* No. 09-14398 (AJG) (Bankr. S.D.N.Y. Dec. 30, 2009) (approving 3.75% break-up fee*); In re Tronox Inc.,* No. 09-10156 (ALG) (Bankr. S.D.N.Y. Sept. 23, 2009) (approving a break-up fee and expense reimbursement totaling 3.7% of total purchase price); *In re BearingPoint, Inc.,* No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving a breakup fee of approximately 3% of the purchase price); *In re Silicon Graphics, Inc.,* No. 09-11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) (approving a break-up fee and expense reimbursement totaling approximately 6% of total purchase price); *In re Bally Total Fitness of Greater N.Y., Inc., No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 21, 2007)* (approving breakup fee of 4.3% of the purchase price).[8]

35.     For the foregoing reasons, the Debtors submit that the proposed Bid Protections satisfy the *Integrated Resources* factors and should be approved.

**(iv)     The Form and Manner of the Auction Notice Should be Approved.**

36.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide their creditors with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to the

---

[8]    Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of these orders are available upon request of the Debtors' counsel.

relief requested herein. The Auction Notice complies with Section 1.D of General Order M-383, and the Debtors submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order coupled with service of the Auction Notice as provided for herein, constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002, Local Bankruptcy Rule 2002-1 and the Section 1.D of General Order M-383.  Accordingly, the Debtors request that the Court approve the form and manner of the Auction Notice proposed herein.

### Notice

37.     Notice of this Motion has been given (a) the Office of the United States Trustee for the Southern District of New York, (b) the Internal Revenue Service; (c) New York State Attorney General's Office; (e) the 20 largest non-insider unsecured creditors of the Debtors on a consolidated basis, (f) Deutsche Bank AG, Cayman Islands Branch, as DIP Lender, (g) Sidley Austin, LLP, as counsel to the DIP Lender (h) Venture Lending & Leasing VI, Inc., as the Prepetition Lender, (i) Greene Radovsky Maloney Share & Hennigh LLP, as counsel to the Prepetition Lender, and (j) those parties who have filed a notice of appearance and request for service of pleadings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

### NO PRIOR REQUEST

38.     No previous motion for the relief sought herein has been made to this or to any other court.

**WHEREFORE**, the Debtors respectfully request that this Court: (a) enter an order in the

form submitted herewith granting the relief requested herein; and (b) grant to the Debtors such

other and further relief as the Court may deem proper.

Dated:   October 21, 2013

        New York, New York

                                      Respectfully submitted,

                                      **LOWENSTEIN SANDLER LLP**

                                      */s/ Wojciech F. Jung*
                                      Kenneth A. Rosen
                                      Wojciech F. Jung
                                      1251 Avenue of the Americas, 17th Floor
                                      New York, New York 10020
                                      (212) 262-6700 (Telephone)
                                      (212) 262-7402 (Facsimile)

                                      *Proposed Counsel to the Debtors and*
                                      *Debtors-in-Possession*