**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Mantara, Inc., *et al.*, [1] | Case No. 13-13370 (ALG) |
| Debtors. | (Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c), AND 364(e); AND (II)
GRANTING RELATED RELIEF**

Upon the motion of Mantara, Inc. ("Mantara") and UNX LLC ("UNX" and, together with

Mantara, the "Debtors") as debtors in possession in the above-captioned chapter 11 cases (the

"Chapter 11 Cases), dated October 16, 2013 (the "Motion"), for entry of an interim order and a

final order (this "Final Order"), under sections 105, 361, 362, 363(c), 363(e), 364(c), and 364(e)

of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy

Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as

amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Rules"), seeking, among other things:

(i)        authorization for Mantara to obtain post-petition financing in the form of a

term loan in the principal amount of $800,000 (the "DIP Loan"), drawn under a debtor-in-

possession credit facility (the "DIP Facility") and for UNX to guaranty unconditionally

Mantara's obligations in connection with the DIP Facility, pursuant to the terms of the Interim

Order (as defined below) and this Final Order and subject to the terms and conditions of the DIP

Loan Documents (as defined below);

(ii)       authorization for the Debtors to execute and enter into that certain DIP

Loan Agreement, by and among Mantara, as Borrower, UNX, as Guarantor, and Deutsche Bank

AG, Cayman Islands Branch, as Lender (the "DIP Lender") (as the same may be amended,

---

[1] The Debtors in these chapter 11 cases are Mantara, Inc. and UNX LLC.  The last four digits of their federal tax
identification number are 2570 and 6704 respectively.

restated, supplemented or otherwise modified from time to time pursuant to the terms thereof, the "DIP Credit Agreement", and together with any related documents and instruments delivered pursuant to or in connection therewith, collectively, the "DIP Loan Documents"), which shall be substantially similar to the form attached as **Exhibit A** to the Interim Order;

(iii)    approval of the terms of, and authorization for the Debtors to execute and enter into the DIP Loan Documents (which shall be in form and substance acceptable to the DIP Lender) and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iv)    authorization for the Debtors' use of proceeds of the DIP Loan in accordance with the terms and conditions set forth in the Interim Order, this Final Order and the DIP Credit Agreement, including the use of such proceeds to (i) repay an amount equal to $520,000 owing by Mantara to Venture Lending & Leasing VI, Inc. (the "Prepetition Lender") in full satisfaction of all obligations of Mantara pursuant to that certain Loan and Security Agreement, dated as of February 3, 2012 (as amended prior to the date hereof, the "Prepetition Credit Agreement" and, together with all other documents related thereto, the "Prepetition Loan Documents"), between Mantara, as Borrower, and the Prepetition Lender, all as more fully set forth in that certain Pay-Off Letter dated October 8, 2013 attached as **Exhibit B** to the Interim Order (the "Payoff Letter"); (ii) pay certain other prepetition expenses to the extent approved by this Court and the DIP Lender; and (iii) fund the working capital and general corporate requirements of the Debtors during the pendency of the Chapter 11 Cases, including certain costs of administration of the Chapter 11 Cases, all in accordance with the DIP Credit Agreement, Approved Budget (as defined below), the Interim Order and this Final Order;

(v)    the grant of (i) valid, enforceable, non-avoidable and fully perfected first priority liens on and senior security interests in (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code) all DIP Collateral (as defined below) to the DIP Lender to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "DIP Obligations"), and (ii) superpriority claims (including a superpriority administrative

claim pursuant to section 364(c)(1) of the Bankruptcy Code) to the DIP Lender having recourse to all prepetition and postpetition property of the Debtors' estate, now owned or hereafter acquired, and any of the Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(vi)    the waiver by the Debtors of any right to surcharge the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or other applicable law;

(vii)    pursuant to Bankruptcy Rule 4001, the scheduling of an interim hearing (the "Interim Hearing") on the Motion for this Court to consider entry of the Interim Order, which, among other things, (i) authorizes Mantara to obtain from the DIP Lender up to $650,000 drawn under the DIP Facility on an interim basis, (ii) authorizes Mantara to use the proceeds of the DIP Loan as set forth herein and in the DIP Credit Agreement, (iii) authorizes UNX to guaranty the DIP Obligations, and (iv) grants the liens and claims provided for herein;

(viii)    the scheduling of a final hearing (the "Final Hearing") on the Motion no later than November 21, 2013 to consider entry of this Final Order granting the relief requested in the Motion on a final basis;

(ix)    modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Lender, and the Prepetition Lender to implement the terms of the Interim Order and this Final Order; and

(x)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of the Interim Order and this Final Order.

Upon due and sufficient notice of the Motion and the Final Hearing having been provided by the Debtors; and after considering all the pleadings filed with this Court; and upon the record made by the Debtors at the Interim Hearing and the Final Hearing; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     **Petition Date**. On October 16, 2013 (the "Petition Date"), the Debtors filed their respective voluntary petitions (the "Petitions") with this Court commencing the Chapter 11 Cases.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.     **Jurisdiction; Venue**.  This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and 9014 and Local Rule 4001-2.  Venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     **Appointment of Committee**.  On November 1, 2013, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Committee") in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

D.     **Interim Order**.  Based on the Motion, the Interim Hearing, and all relevant pleadings filed with the Court, the Court approved the Debtors' entry into and performance under the DIP Credit Agreement and the other DIP Loan Documents on an interim basis as well as all other requested interim relief and entered on October 24, 2013, the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), and 364(e); (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (IV) Granting Related Relief* (the "Interim Order").  [Dkt. No. 31].

E.     **Notice**.  The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, regular mail,

overnight courier or hand delivery, on October 28, 2013 [Docket No. 50], to certain parties in interest, including: (a) the U.S. Trustee, (b) the 20 largest non-insider unsecured creditors of each of the Debtors, (c) Deutsche Bank AG, Cayman Islands Branch, as DIP Lender, (d) Sidley Austin, LLP, as counsel to the DIP Lender (e) Venture Lending & Leasing VI, Inc., as the Prepetition Lender, (f) Greene Radovsky Maloney Share & Hennigh LLP, as counsel to the Prepetition Lender, and (g) all other parties known by the Debtors to assert liens or security interests in the assets of the Debtors. Under the circumstances, such notice of the Motion, the relief requested therein and the Final Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

F.    **Debtors' Stipulations With Respect to Prepetition Obligations**. The Debtors hereby admit, acknowledge, agree and stipulate that (collectively, the "Debtors' Stipulations"):[2]

   a.    The Debtors' obligations under the Prepetition Loan Documents are secured by liens on and security interests in substantially all of their assets; and

   b.    Prior to the Petition Date, Mantara's obligations under the Prepetition Loan Documents totaled approximately $1,182,677; and

   c.    On October 8, 2013, Mantara and the Prepetition Lender entered into the Pay-Off Letter. Pursuant to the Pay-Off Letter, the Prepetition Lender agreed to, *inter alia*, reduce Mantara's obligations under the Prepetition Loan Documents to $520,000 (the "Pay-Off Amount") if it receives the Pay-Off Amount on or before October 25, 2013. Payment of the Pay-Off Amount on or before October 25, 2013 shall release the Debtors from outstanding obligations under the Prepetition Loan Documents as set forth in the Pay-Off Letter.

G.    **Budget for DIP Facility**. Attached as Schedule 6 to the Chin Declaration (as

---

[2] Nothing contained herein constitutes an acknowledgment or admission as to the extent, validity priority or perfection of the Prepetition Lender's liens, mortgages or other security interests granted by the Debtors pursuant to the Prepetition Loan Documents and/or any other secured party or document. The Debtors reserve any and all rights, claims, and defenses with respect thereto.

defined in the Motion) is a thirteen-week forecast setting forth projected cash disbursements for the period commencing with on the Petition Date (the "Initial Approved Budget").  The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors and approved by the DIP Lender, without subsequent order of the Court but subject to filing of such  additional budgets on the docket in these cases (each such additional budget, a "Supplemental Approved Budget" and together with the Initial Approved Budget, the "Approved Budget"), in accordance with the terms of the DIP Credit Agreement.  The Initial Approved Budget is an integral part of this Final Order and has been relied upon by the DIP Lender in consenting to provide the DIP Loan.  The Debtors represent and warrant to the DIP Lender and this Court that the Approved Budget includes and contains the Debtors' best estimate of all operational disbursements, fees, costs and other expenses necessary for the period covered by the Approved Budget and that such operational disbursements, fees, costs and other expenses will be timely paid in the ordinary course of business pursuant to and in accordance with the Approved Budget unless such operational disbursements, fees, costs and other expenses are not incurred or otherwise payable.  The Debtors further represent that the Initial Approved Budget is achievable and will allow the Debtors to operate in the Chapter 11 Cases and pay postpetition administrative expenses as they come due.  In accordance with the DIP Credit Agreement, the Debtors shall be required to provide to the DIP Lender, among other things, a bi-weekly line-by-line budget variance report setting forth disbursements for the preceding two calendar week period and comparing the actual aggregate disbursements of the Debtors for the then-current calendar month with amounts provided for in the Approved Budget on a line-by-line basis for such calendar month.  The aggregate operating cash disbursements of the Debtors on a monthly basis in the categories referenced in the Approved Budget may deviate from the operating cash disbursements projected in the Initial Approved Budget for such period, by up to 15% without the need for any further Court order.  Any deviations beyond the forgoing shall be permitted, without the need for any further Court order, only if the Debtors obtain the prior written consent

of the DIP Lender, and under no circumstances is the DIP Lender obligated to increase the size of the DIP Facility.

H.      **Immediate Need for Funding**.   The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the DIP Facility.   The Debtors' ability to maintain business relationships with vendors, suppliers and customers, pay their remaining employees, and otherwise finance their operations post-petition is essential to maintaining the value of the Debtors and the Debtors' ability to maximize the value of the assets of their estates, including through the financing of a sale process for all or substantially all of the Debtors' intellectual property assets.   In the absence of the DIP Facility, the Debtors' businesses and estates would suffer immediate and irreparable harm, including, without limitation, a cessation of substantially all of the Debtors' operations.   The preservation, maintenance and enhancement of the value of the Debtors are of the utmost significance and importance to a successful and orderly, value-maximizing liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

I.      **No Credit on More Favorable Terms**.   The Debtors are unable to obtain sufficient financing from sources other than the DIP Lender on terms and subject to conditions more favorable than under the DIP Facility and the DIP Loan Documents, and are not able to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.   The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement without the Debtors granting to the DIP Lender, (i) the DIP Superpriority Claims (as defined below) subject to the Carve-Out (as defined below) and (ii) the DIP Liens (as defined below) in the DIP Collateral, each as provided herein and in the DIP Loan Documents.

J.      **Reasonable; Good Faith**.   The DIP Lender has indicated a willingness to provide the Debtors with post-petition secured financing but solely on the terms and conditions set forth in this Final Order and the DIP Loan Documents.   After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the DIP Facility to

be provided by the DIP Lender represents the best financing presently available to the Debtors.
Accordingly, the Debtors represent that (i) the terms and conditions of the DIP Facility are fair
and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their
fiduciary duties and are supported by reasonably equivalent value and fair consideration, (ii) the
DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the
DIP Lender and (iii) any credit extended, loans made and other financial accommodations
extended to the Debtors by the DIP Lender have been extended, issued or made, as the case may
be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.  The Debtors
have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2)
and the Local Bankruptcy Rules.  Absent granting the relief provided in this Final Order, the
Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility
in accordance with this Final Order and the DIP Loan Documents is, therefore, in the best
interests of the Debtors' estates and is consistent with the Debtors' fiduciary duties.

K.     **Consent by Prepetition Secured Parties**.   Conditioned on the entry of the
Interim Order and the provisions thereof authorizing the use of DIP Loan proceeds to satisfy the
outstanding obligations of the Debtors to the Prepetition Lender, as more fully set forth herein
and in the DIP Credit Agreement, the Prepetition Lender has consented to the financing
arrangements contemplated by the Interim Order, this Final Order and the DIP Loan Documents
on the terms and conditions set forth in the Interim Order, this Final Order and the DIP Credit
Agreement.

L.     **Good Cause Shown; Best Interests**.   The Debtors have requested immediate
entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry
of this Final Order, the Debtors' business, assets and estate will be immediately and irreparably
harmed.  Good cause has been shown and entry of this Final Order is in the best interest of the
Debtors' estates and creditors as its implementation will, among other things, allow for the
continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for
the successful sale of all or substantially all of their intellectual property assets pursuant to a

subsequent order of this Court.

M.    **No Liability to Third Parties**.  The Debtors stipulate that in making decisions to advance the DIP Loan to the Debtors, in administering the DIP Loan, in accepting the Initial Approved Budget or any future Supplemental Approved Budget and in taking any other actions permitted by the Interim Order, this Final Order or the DIP Loan Documents, the DIP Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

N.    **Section 552**.  In light of the subordination of the DIP Liens and DIP Superpriority Claims to the Carve-Out and the Non-Primed Liens, the DIP Lender is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    **Approval of Final Order**.  The Motion is approved on a final basis on the terms and conditions set forth in this Final Order.  Any objections that have not previously been withdrawn or settled are hereby overruled.  This Final Order shall become effective immediately upon its entry.

2.    **Ratification of Interim Order**.  The terms of the Interim Order are hereby ratified and confirmed, except to the extent modified by this Final Order, and all DIP Obligations incurred and borrowings and payments made and protections afforded to the DIP Lender and to any other party pursuant to the Interim Order are ratified and confirmed on a final basis and shall be deemed to be made in accordance with and pursuant to this Final Order.

3.    **Approval of DIP Loan Documents; Authority Thereunder**.  The DIP Loan Documents are hereby approved on a final basis.  The Debtors are expressly authorized, empowered and directed on a final basis to perform all of their obligations under the DIP Loan

Documents, including the DIP Credit Agreement, and such additional documents, instruments and agreements as may be required or requested by the DIP Lender pursuant to the DIP Credit Agreement to implement the terms or effectuate the purposes of this Final Order. The Debtors are authorized to comply with and perform all of the terms and conditions contained in the DIP Loan Documents, and directed to repay amounts borrowed, together with interest, fees and premiums (as applicable) thereon and any other outstanding DIP Obligations to the DIP Lender in accordance with and subject to the terms and conditions set forth in the DIP Loan Documents and this Final Order. In the event of any inconsistency between the DIP Loan Documents and this Final Order, this Final Order shall control.

4. **Authorization to Borrow**. Pursuant to this Final Order, the DIP Credit Agreement and the other DIP Loan Documents, the Debtors are authorized on a final basis to borrow up to a maximum principal amount of $800,000 of the DIP Loan under the DIP Facility on a final basis. The Debtors are authorized on a final basis to use the proceeds of the DIP Facility in the operation of their businesses, to pay the costs of administration of the Chapter 11 Cases, to consummate the transaction contemplated by the Pay-Off Letter (as further described herein), and to pay certain other prepetition expenses to the extent approved by this Court and the DIP Lender, provided, that any proposed use of proceeds of the DIP Facility is consistent with the terms of the DIP Loan Documents, the Approved Budget and this Final Order.

5. **Collections and Disbursements.** Subject to Paragraph 14 below, from the Petition Date until the DIP Obligations have been paid in full in cash (or otherwise satisfied in accordance with the provisions of the DIP Credit Agreement), all cash receipts and all proceeds from the sale or other disposition of the DIP Collateral and all other proceeds of DIP Collateral of any kind which are now or shall hereafter come into the possession or control of the Debtors, or to which the Debtors are now or shall hereafter become entitled, shall be promptly deposited only into accounts upon which the DIP Lender has perfected DIP Liens pursuant to the terms of the DIP Loan Documents, the Interim Order and/or this Final Order and such collections and proceeds shall be subject to all of the security interests and liens of the DIP Lender provided for

herein and in the DIP Loan Documents and shall be treated in accordance with the Interim Order, this Final Order and the DIP Credit Agreement.

6. **Perfection in Cash.**  Subject to the Carve-Out and the other provisions of this Final Order, all financial institutions in which the Debtors' accounts are located are authorized and directed to comply with any request of the DIP Lender to turn over to the DIP Lender all funds therein without offset or deduction of any kind; provided, however, that nothing herein shall be deemed to extinguish any rights that the financial institution may otherwise have against the funds held by such financial institution.  The Debtors are directed to enter into such blocked account agreements with springing cash dominion with the DIP Lender and such financial institutions as the DIP Lender may require.

7. **Interest on DIP Facility.**  The rate of interest to be charged for the DIP Loan and other extensions of credit to the Debtor pursuant to the DIP Credit Agreement shall be seven-and-one-half percent (7.50%) per annum (the "Interest Rate"), computed and payable as provided in the DIP Credit Agreement.  Upon the occurrence and during the continuation of an Event of Default (as defined in the DIP Credit Agreement), the outstanding principal amount of the DIP Loans (including any overdue interest) shall bear interest at the Interest Rate plus two percent (2.00%) per annum, also computed and payable as provided in the DIP Credit Agreement.

8. **Indemnification of DIP Lender Parties**.  The Debtors are hereby authorized and directed to (i) indemnify, defend, and hold and save harmless the DIP Lender and each of its respective employees, agents, directors, members, management, officers or other affiliates (each, an "Indemnitee") from any losses, damages, claims, actions, demands, or lawsuits of any kind arising out of the transactions contemplated by the DIP Credit Agreement, except as may be caused by the gross negligence or willful misconduct of the applicable Indemnitee; and (ii) pay all out-of-pocket expenses of the DIP Lender (including reasonable attorneys' fees) in connection with the enforcement of any provision of the DIP Credit Agreement (the obligations in clauses (i) and (ii) collectively, the "Indemnification Obligations").  All such Indemnification

Obligations of the DIP Lender shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to other DIP Obligations under the Interim Order, this Final Order and the DIP Loan Documents.

9.    **Validity of DIP Loan Documents**.   The DIP Loan Documents shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of the DIP Loan Documents and the terms of this Final Order for all purposes during the Chapter 11 Cases, in any subsequently converted Chapter 11 Case of either of the Debtors under chapter 7 of the Bankruptcy Code or after dismissal of either of the Chapter 11 Cases.  No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

10.    **DIP Superpriority Claims**.    In accordance with Bankruptcy Code section 364(c)(1), the DIP Obligations shall constitute superpriority administrative expense claims (the "DIP Superpriority Claims") against the Debtors with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of either of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that the DIP Superpriority Claims shall be subject to the Carve-Out (as defined below). The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code against the Debtors and shall be payable from and have recourse to all prepetition and

postpetition property of the Debtors and all proceeds thereof, excluding the proceeds of Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions").  Except as set forth in this Final Order, no other superpriority claims shall be granted or allowed in either of the Chapter 11 Cases.

11.    **DIP Liens**.    As security for the DIP Obligations, the DIP Lender is hereby granted on a final basis, subject only to payment of the Carve-Out, (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lock box or control agreements, financing statements, or any other instruments or otherwise) valid, binding and fully perfected, security interests in and liens upon (the "DIP Liens"), all present and after-acquired property of the Debtors of any nature whatsoever, including, without limitation, all cash and cash equivalents contained in any accounts maintained by the Debtors but excluding all Avoidance Actions of the Debtors or their estates and any proceeds thereof (collectively, with all proceeds and products of any or all of the foregoing, the "DIP Collateral"), such DIP Liens to consist of:

a.    First Lien on Cash Balances and Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a continuing, enforceable, first priority, fully-perfected lien and security interest upon all of the Debtors' right, title and interest in, to and under (i) all DIP Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date, and (ii) all DIP Collateral as was previously subject to liens and security interests in favor of the Prepetition Lender (collectively, the "Unencumbered Property").

b.    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a junior, perfected lien and security interest (other than as set forth in clause (c) below) upon all of the Debtors' right, title and interest in, to and under all DIP Collateral (other than the property

described in clause (a) of this paragraph 11, as to which liens and security interests in favor of the DIP Lender will be as described in such clause), whether now existing or hereafter acquired, that is subject to (i) any validly perfected and enforceable security interest or lien in existence as of the Petition Date, or (ii) any valid and enforceable security interest or lien perfected (but not granted) after the Petition Date (to the extent such perfection in respect of a pre-Petition Date claim is expressly permitted under the Bankruptcy Code), in each case that is (A) not subject to section 552(a) of the Bankruptcy Code and (B) senior in priority to the liens of the Prepetition Lender (the "<u>Non-Primed Liens</u>").

c.    <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is unperfected or avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of either of the Debtors, or (iii) any intercompany or affiliate liens of either of the Debtors.

12.    **Satisfaction of Obligations to Prepetition Lender; Release of Liens by Prepetition Lender**.  The Debtors are hereby authorized and directed on a final basis, consistent with the terms of the DIP Credit Agreement, to use the proceeds of the DIP Facility to pay $520,000 to the Prepetition Lender pursuant to the Pay-Off Letter, in full satisfaction of all of the Debtors' obligations pursuant to the Prepetition Credit Agreement and related documents (the "<u>Prepetition Payoff</u>").  Immediately upon consummation of the Prepetition Payoff, (i) all claims of the Prepetition Lender against the Debtors shall be deemed satisfied in full and (ii) all liens or security interests held by or in favor of the Prepetition Lender upon or in assets of the Debtors or their estates shall be deemed terminated, satisfied, released and extinguished, in each case

without the need for any further action by the Debtors or any other party. The Court reserves the authority to reverse the Prepetition Payoff in the event a timely Challenge (as defined below) is successfully asserted pursuant to Paragraph 14 hereof; provided, however, the DIP Lender's DIP Liens on assets previously encumbered by the Prepetition Lender shall retain their first-priority status at all times following the consummation of the Prepetition Payoff notwithstanding the subsequent successful assertion of a Challenge or reversal of the Prepetition Payoff.

13. **Carve-Out**. Upon the occurrence (the "Carve-Out Event") of the earlier of (i) the Debtors' receipt of notice of Event of Default and continuance thereof and (ii) the Scheduled Termination Date (as defined in the DIP Credit Agreement), to the extent unencumbered funds are not available to pay administrative expenses in full, the DIP Liens and DIP Superpriority Claims shall be subject to the payment of (x) the aggregate amount of any unpaid fees, costs and expenses that were provided for in the Approved Budget and accrued or incurred prior to the Carve-Out Event by the professionals retained by the Debtors and any professional retained by the Committee (collectively, the "Professionals") to the extent allowed by an order of this Court, plus (y) those fees, costs and expenses incurred by the Professionals after the Carve-Out Event and subsequently allowed by order of this Court (and, if applicable, in compliance with the Approved Budget) in an amount not to exceed $50,000 in the aggregate, plus (z) fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930 (collectively, the "Carve-Out"); provided, however, that, following a Carve-Out Event, any amounts actually paid to Professionals by any means will reduce the Carve-Out on a dollar-for-dollar basis; provided, further, that no portion of the Carve-Out, DIP Facility, or DIP Collateral, shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Lender, including, without limitation, (a) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, the DIP Liens, or the DIP Superpriority Claims or (b) asserting any claims or causes of action,

including, without limitation, claims or causes of actions to hinder or delay the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Loan Documents or this Final Order; and, provided, further, that upon (i) the sale or other disposition of the Acquired Assets (as defined in the Asset Purchase Agreement) or any portion thereof, whether to Purchaser or any other party, or (ii) satisfaction of the outstanding DIP Obligations in accordance with the terms of this Final Order and the DIP Credit Agreement, the Carve-Out shall cease to exist and the DIP Lender shall have no further obligations with respect to (and the DIP Liens and DIP Superpriority Claims shall cease to be subordinated to) any fees, costs or expenses of any Professionals.  Notwithstanding the foregoing, so long as a Carve-Out Event has not occurred: (i) the Debtors shall be permitted to pay, subject to and in accordance with the Approved Budget, administrative expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable; and (ii) such payments shall not be applied to reduce the Carve-Out (to the extent such payments are ultimately permitted by the Court).  Nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, DIP Lender, the Committee, U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts incurred or requested.  Furthermore, none of the Carve-Out, DIP Collateral or any proceeds of the DIP Facility shall be used to prevent, hinder or delay the DIP Lender from enforcing or realizing upon the DIP Collateral once an Event of Default has occurred, or has been determined by the Court to have occurred, and is continuing under the DIP Loan Documents or this Final Order; provided, however, that such limitation shall not apply any dispute or challenge related to whether an Event of Default has occurred or is continuing.

14.    **Investigation Rights**.  The Committee shall have until the later of (i) sixty (60) days from appointment of the Committee or (ii) sixty (60) days from entry of this Final Order, and any other non-Debtor parties in interest shall have sixty (60) days from the entry of this Final Order (each, as applicable, the "Investigation Termination Date"), to investigate the validity,

perfection and enforceability of the Prepetition Lender's liens and security interests or to assert any other claims or causes of action against the Prepetition Lender. If the Committee or any non-Debtor party in interest, subject to having obtained the requisite standing, determines that there may be a challenge to the Prepetition Lender by the Investigation Termination Date, then upon three (3) days' written notice to the Debtors and the Prepetition Lender, the Committee or such other non-Debtor party in interest hereafter vested with authority by this Court shall be permitted to file and prosecute an objection or claim related thereto (each, a "Challenge"), and shall have only until the applicable Investigation Termination Date to file such objection or otherwise initiate an appropriate action on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action; provided, however, that the Committee shall be and is hereby granted standing and authority to file and prosecute a Challenge on behalf of the Debtors' estates raising any and all objections, claims and defenses with respect to the Prepetition Lender and its liens and claims without further motion seeking authority to bring a Challenge and without further order of this Court; provided, further, that nothing contained in this Final Order shall be deemed to confer standing on any non-Debtor party in interest (other than the Committee) to commence a Challenge. If a Challenge is not filed on or before the Investigation Termination Date, then, without further action by any party or any further order of this Court: (a) the agreements, acknowledgments and stipulations contained in Paragraph F of this Final Order, shall be deemed to be immediately and irrevocably binding on the Debtors and the Debtors' estates, the Committee and all parties in interest and any and all successors in interest as to any of the foregoing, and the Committee and any other party in interest and any and all successors in interest thereto shall be forever barred from bringing any Challenge; (b) the liens and security interests of the Prepetition Lender shall be deemed to have constituted, as of the Petition Date, valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the obligations of the Debtors to the Prepetition Lender shall be deemed to have been, as of the Petition Date, finally allowed claims for all purposes in these Chapter 11

Cases and any subsequent chapter 7 cases, in the amounts set forth in Paragraph F and shall not be subject to challenge by any party in interest as to validity, priority or otherwise; and (d) the Debtors shall be deemed to have released, waived and discharged the Prepetition Lender, together with each of its officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Debtors' obligations to the Prepetition Lender or their prepetition relationship with the Prepetition Lender relating to the obligations of the Debtors under the Prepetition Credit Agreement or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority or enforceability of the liens and security interests of the Prepetition Lender or the obligations they secure, any claims or defenses under chapter 5 of the Bankruptcy Code, or any other causes of action.  Notwithstanding anything to the contrary herein: (a) if any such Challenge is timely commenced, the stipulations contained in Paragraph F of this Final Order shall nonetheless remain binding on all parties-in-interest and preclusive except to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (b) the Prepetition Lender reserves all of its rights to contest any Challenge on any grounds.

15.   **Dispositions of Collateral**.  Until (i) the DIP Obligations have been paid in full or otherwise satisfied in accordance with the provisions of the DIP Credit Agreement, and (ii) the Deposit (as that term is defined in that certain Asset Purchase Agreement by and among the Debtors, as Sellers, and Deutsche Bank Securities, Inc., as Buyer (the "Purchaser"), dated October 16, 2013 and attached as Exhibit A to the *Debtors' Emergency Motion for Entry of an Order Authorizing the Debtors to Assume Asset Purchase Agreement for the Sale of Certain Intellectual Property Pursuant to Sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6006* (the "Asset Purchase Agreement") has been refunded in full or otherwise satisfied in accordance with the provisions of the Asset Purchase Agreement, in the event of any sale, lease or other disposition of any DIP Collateral (a "Collateral Disposition"), the Debtors shall, as a condition to approval of such Collateral Disposition, immediately pay, or

cause to be paid, to the DIP Lender all of the proceeds of such Collateral Disposition for application to the DIP Obligations  and the obligation to refund the Deposit and shall comply with all other provisions in the DIP Loan Documents and this Final Order in connection with any such Collateral Disposition; provided, however, that if Deutsche Bank Securities, Inc. or its designee is the purchaser of the assets subject to such Collateral Disposition, then the then-outstanding DIP Obligations and the Deposit shall be applied as credits against the purchase price for such assets as further set forth in Paragraph 16 of this Final Order, the DIP Credit Agreement and the Asset Purchase Agreement.  Any proceeds in excess of the amounts needed to pay all outstanding DIP Obligations and refund the entire Deposit in accordance with the provisions of the DIP Credit Agreement and the Asset Purchase Agreement, as applicable, shall be paid to the Debtors.

16.    **Credit Bid.**  In any sale of any DIP Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for either of the Debtors under section 725 of the Bankruptcy Code, the DIP Lender shall have the unqualified right to credit bid up to the full amount of the outstanding DIP Obligations and shall receive credit in the valuation of its bid for the entirety of the outstanding amount of the Deposit.

17.    **Further Assurances**.  The Debtors shall execute and deliver to the DIP Lender, all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or evidence the perfection of the DIP Liens granted pursuant hereto.  Further, the Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and shall pay fees and expenses that may be required or necessary for the Debtors' performance under the DIP Loan Documents.

18.    **506(c) Waiver**.  Except to the extent of the Carve-Out, no costs or expenses of administration of each of the Chapter 11 Cases or any future proceeding that may result there

from, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.  In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral.

19.    **Restrictions on Granting Post-Petition Liens**.  Other than the Carve-Out, or as otherwise provided in this Final Order or the DIP Credit Agreement, no claim having a priority superior or *pari passu* with those granted by this Final Order to the DIP Lender shall be granted or permitted by any order of this Court heretofore or hereafter entered in either of the Chapter 11 Cases, while any portion of the DIP Facility (or refinancing thereof), any portion of the DIP Loan, or any other DIP Obligations are outstanding.  Except as expressly permitted by this Final Order and the DIP Loan Documents, the Debtors shall not, at any time during their respective Chapter 11 Cases, grant mortgages, security interests or liens in the DIP Collateral (or any portion thereof) to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.  Unless all DIP Obligations shall have indefeasibly been paid in full in cash or credit bid as part of a Collateral Disposition, the Debtors shall not seek, and it shall constitute an Event of Default (as defined in the DIP Credit Agreement) if either Debtor seeks, or if there is entered, (i) any modification of this Final Order without the prior written consent of the DIP Lender, or (ii) an order converting or dismissing either of the Chapter 11 Cases.

20.    **Automatic Effectiveness of Liens**.  The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date, having the priority set forth in Paragraph 11 of this Final Order, without any further action by the Debtors or the DIP Lender and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or the Library of Congress, or other documents or the taking of any other

actions.  All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except as permitted in the DIP Loan Documents and this Final Order.  If the DIP Lender hereafter requests that the Debtors execute and deliver to the DIP Lender financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by the DIP Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Lender is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order.

   21. **Automatic Stay**.  As provided herein, subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence and during the continuance of any Event of Default (as defined in the DIP Credit Agreement), all rights and remedies provided for in the DIP Loan Documents, and, without limiting the generality of the foregoing, to take any or all of the following actions: (a) immediately cease making any advances under the DIP Facility and terminate the Debtors' authority to use the proceeds of the DIP Facility; (b) declare all DIP Obligations to be immediately due and payable; (c) charge the default rate of interest provided for under the DIP Credit Agreement; and, so long as the DIP Lender has provided seven (7) business days prior written notice to the Debtors, their bankruptcy counsel, counsel to the Committee, and the U.S. Trustee and the opportunity for the Debtors to cure any identified Event(s) of Default: (d)  freeze monies or balances in the Debtors' accounts; (e) immediately set off any and all amounts in accounts maintained by either of the Debtors with the DIP Lender against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of the DIP Lender for application towards the DIP Obligations; (f) foreclose on the

DIP Collateral or otherwise exercise remedies against the DIP Collateral; and (g) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations. Following the giving of written notice by the DIP Lender of the occurrence of an Event of Default, the Debtors and the Committee in either of the Chapter 11 Cases shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default has occurred; provided, however, that the Court may consider these arguments or any other pertinent matters. The Debtors shall not have the right to contest the enforcement of the remedies set forth in the Interim Order, this Final Order and the DIP Loan Documents on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, no party-in-interest shall have the right to enjoin any such enforcement under section 105 of the Bankruptcy Code or otherwise, or to seek any injunctive relief inconsistent with the provisions of the Interim Order, this Final Order or the DIP Loan Documents. The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Loan Documents or otherwise. The Debtors shall cooperate fully with the DIP Lender in its exercise of rights and remedies against the DIP Collateral. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

22.    **Additional Events of Default.**  In addition to the Events of Default set forth in the DIP Credit Agreement, it shall be an Event of Default under the DIP Credit Agreement and this Final Order, entitling the DIP Lender to exercise the remedies under the DIP Credit Agreement and this Final Order, if, other than as permitted under the terms of the DIP Credit Agreement or the express prior written consent of the DIP Lender, either Debtor sells any of the DIP Collateral other than in the ordinary course of business consistent with past practice, or any of the following fails to occur:

a.    on or before December 5, 2013, the Debtors shall have obtained Court

approval of the Sale Motion, pursuant to an order (the "<u>Sale Order</u>") in form and substance acceptable to the DIP Lender, granting the Sale Motion;

b.    on or before the Outside Date, the Debtors shall have consummated the sale contemplated by the Sale Motion and authorized under the Sale Order.

23.    **Binding Effect**.    The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Lender, the Debtors, the Committee, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of either of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of either of the Debtors or with respect to the property of the estate of the Debtor).    To the extent permitted by applicable law, this Final Order shall bind any trustee hereafter appointed for the estates of either of the Debtors, whether in the Chapter 11 Cases or in the event of the conversion of either of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.    Such binding effect is an integral part of this Final Order.

24.    **Survival**.    The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization or liquidation in either of the Chapter 11 Cases (and, to the extent not satisfied in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having hereby waived such discharge), (ii) converting either of the Chapter 11 Cases to a chapter 7 case, or (iii) dismissing either of the Chapter 11 Cases, and the terms and provisions of this Final Order as well as the DIP Superpriority Claims and the DIP Liens granted pursuant to this Final Order and the DIP Loan Documents shall continue in full force and effect notwithstanding the entry of any such order. The DIP Superpriority Claims and the DIP Liens shall maintain their priority as provided by this Final Order and the DIP Loan Documents, and to the maximum extent permitted by law, until all

of the DIP Obligations are indefeasibly paid in full and discharged.  In no event shall any plan of reorganization for either or both of the Debtors be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents and this Final Order.

25.    **Reallocation.**    For the avoidance of doubt, in the event that it is determined by this Court after a successful Challenge, if any, that the Prepetition Lender did not maintain valid, perfected and enforceable liens on the collateral securing the Debtors' obligations to the Prepetition Lender, the Court, after notice and hearing, reserves the right to reallocate any payments made to the Prepetition Lender.

26.    **Insurance Policies**.  The DIP Lender hereby is, and is deemed to be, without the need for any further action or notice, named as an additional insured and loss payee, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.  Notwithstanding the foregoing, the Debtors are authorized and directed to take any actions necessary to have the DIP Lender be added as an additional insured and loss payee on each insurance policy.

27.    **Restriction on Use of DIP Lender's Funds**.  The Debtors shall not be permitted to use the proceeds of the DIP Facility: (a) for the payment of interest and principal with respect to any indebtedness that is subordinated to the DIP Facility except as expressly set forth herein or in the DIP Loan Documents, (b) to finance in any way any adversary action, suit, arbitration, proceeding, application, motion, other litigation, examination or investigation of any type relating to or in connection with the DIP Loan Documents, (c) to finance in any way any action, suit, arbitration, proceeding, application, motion, other litigation, examination or investigation of any type adverse to the interests of the DIP Lender or its rights and remedies under the DIP Credit Agreement, the other DIP Loan Documents, the Interim Order or this Final Order without the prior written consent of the DIP Lender, (d) to make any distribution under a plan of reorganization or liquidation in either of the Chapter 11 Cases, (e) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Lender; (f) to make any Restricted Payment (as

defined in the DIP Credit Agreement); (g) to pay any expense other than expenses incurred in accordance with paragraph 6(f) of the DIP Credit Agreement; or (h) to make any payment prohibited under the terms of the DIP Credit Agreement.

28.   **Reserved**.

29.   **Protection Under Section 364(e)**.   If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations incurred prior to the actual receipt by the DIP Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations owing to DIP Lender.   Notwithstanding any such reversal, modification, vacation or stay, the incurrence of DIP Obligations by the Debtors prior to the actual receipt by the DIP Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Final Order, and the DIP Lender shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Final Order and the DIP Loan Documents with respect to the incurrence of DIP Obligations.

30.   **Effect of Dismissal of the Chapter 11 Case**.   If either of the Chapter 11 Cases is dismissed or converted, such dismissal or conversion shall not affect the rights of the DIP Lender under the DIP Loan Documents or this Final Order, and all of the rights and remedies thereunder of the DIP Lender shall remain in full force and effect as if the Chapter 11 Case had not been dismissed or converted.   If an order dismissing either of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (i) the DIP Liens and DIP Superpriority Claims granted to and conferred upon the DIP Lender and the protections afforded to the DIP Lender pursuant to this Final Order and the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations shall have been paid and satisfied in full

(and that such DIP Liens, DIP Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties); and (ii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens and DIP Superpriority Claims referred to herein.

31.    **Choice of Law; Jurisdiction**.  The DIP Facility and the DIP Loan Documents (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, including, without limitation, Sections 5-1401 and 5-1402 of the New York General Obligations Law, and, to the extent applicable, the Bankruptcy Code.  This Court shall have exclusive jurisdiction with respect to any and all disputes or matters arising under, out of or in connection with, the DIP Facility or the DIP Loan Documents.

32.    **Order Effective**.  This Final Order shall be effective as of the date of the signature by the Court.

33.    **No Requirement to Accept Title to Collateral**. The DIP Lender shall not be obligated to accept title to any portion of the DIP Collateral in payment of the indebtedness owed to the DIP Lender by the Debtors, in lieu of payment in cash or cash equivalents, nor shall the DIP Lender be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the DIP Lender.

34.    **Controlling Effect of Final Order**.  Except as expressly modified or superseded by this Final Order, the Interim Order shall continue in full force and effect notwithstanding entry of this Final Order.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Interim Order, the Motion, any prepetition agreement or any DIP Loan Document, the provisions of this Final Order shall control to the extent of such conflict.

Dated:  November 25, 2013                    s/Allan L. Gropper
　　　　New York, New York                    The Honorable Allan L. Gropper
                                             United States Bankruptcy Judge